Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave., 17th Fl.
Glendale, California 91203
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ISABEL ARTIGA, GABRIEL RODRIGUEZ and JESSICA SHEEHAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABM INDUSTRY GROUPS, LLC, a Delaware Limited Liability Company, and DOE ONE through and including DOE TEN,<br><br>Defendants. | Case No. 2:19-cv-06735-GW-RAO<br>*Assigned to Hon. George H. Wu*<br><br>(Removed from Los Angeles Superior Court, Case No. 19STCV1968<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION** |
| ABM INDUSTRY GROUPS, LLC, a Delaware Limited Liability Company<br><br>Counter-Claimant,<br><br>v.<br><br>I. ARTIGA, an individual, and ROES 1 through t10,<br><br>Counter-Defendants. | Date: November 15, 2021<br>Time: 8:30 a.m.<br>Ctrm: 9D<br>    350 West First Street<br>    Los Angeles, CA 90012<br><br>Action Filed: June 4, 2019<br>Trial Date:   None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE** that, on November 15, 2021, at 8:30 a.m., in Courtroom 9D of the above-captioned Court located 350 West 1st Street, Los Angeles, California 90012, or on such other date and time as the Court may designate, the Honorable George H. Wu presiding, Plaintiffs Artiga, Sheehan and Rodriguez ("Plaintiffs") will move for an order granting preliminary approval of a class-wide settlement reached in the above-captioned action, as well as for conditional certification, for settlement purposes only, of the Settlement Class defined in the Joint Stipulation Re: Class Action Settlement ("Settlement Agreement").[1]

The parties have agreed to payment of settlement awards to participating claimants from a non-reversionary $2,300,000 gross settlement fund.  The 40,595 class members[2] have been divided into the following subclasses for purposes of allocation of the settlement proceeds:

1) **New Hire Wage Subclass**:  All non-exempt California employees of ABM Industry Groups, LLC and its predecessors ("ABM"), who were hired during the period from October 14, 2015 to the earliest of December 31, 2021, or preliminary approval of the Stipulation of Settlement (the "Term Date").  As of October of 2021, there are 29,649 New Hire Wage Subclass members.

2) **Wage Statement Settlement Subclass**:  All ABM non-exempt California employees from October 14, 2018 to the Term Date.  As of October 2021 there are 29,649 Wage Statement Settlement Subclass members.

---

[1] The Motion is intended to ultimately result in the settlement and dismissal of the PAGA claim pending in the state court action, <u>Mario Ernesto Gil Canas v. ABM Industry Groups, LLC</u>, Los Angeles Superior Court Case No. 20STCV37443 (filed Sept. 30, 2020).  Concurrently with the filing of this Motion, the parties have filed a stipulation for the filing a Third Amended Complaint ("TAC"), which seeks to add Mario Ernesto Gil Canas, as well as Lorenza Torres and Jaime Mendoza as additional plaintiffs. The class definition specifically excludes approximately 100 ABM "Event Tech" employees who are the subject of the <u>Romero-Abrego v. ABM Industries, Inc.</u> litigation pending in the San Mateo Superior Court, Case No. 20-CIV-04089 (filed Sept. 22, 2020).  Harris Decl.,
[2] The final number of class members will depend on date of preliminary approval, but no later than on December 31, 2021.  October 19, 2021 Harris Declaration ("Harris Decl."), Ex. 1, p. 9.

3) **<u>Former Employee Uniform Deposit Settlement Subclass</u>**:  All ABM California employees, with uniform deposits on file, who separated between June 4, 2015 and May 7, 2021, the date on which ABM terminated its uniform deposit program.  There are 2,908 Former Employee Uniform Deposit Settlement Subclass members.

4) **Current Employee Uniform Deposit Settlement Subclass**:  All ABM California employees, with uniform deposits on file, who were active as of May 7,2021, the date on which ABM terminated its uniform deposit program.  There are 843 Current Employee Uniform Deposit Settlement Subclass members.

5) **Supervisor Meal and Rest Break Settlement Subclass**:  All ABM non-exempt California supervisors and leads, from October 14, 2015 to the Term Date. "Supervisors and Leads" shall be defined as all nonexempt employees with the term "Manager," "Supervisor," "Lead" or "Foreperson" in their job description field according to ABM records.  As of April 2, 2021 there are 2,650 Supervisor Meal and Rest Break Settlement Subclass members.  As of October 2021, the number of pay periods for this subclass is 118,671.

6) **PAGA Settlement Group**:  All California allegedly aggrieved employees in the Actions from 8/28/17 to the Term Date. "Allegedly aggrieved employees" shall be defined as all employees within the scope of the PAGA letters submitted by Plaintiffs.  As of October 2021 there are 36,717 PAGA Settlement Group members.

Since 40,595 workers are eligible to recover, the gross settlement fund represents a possible recovery of just over $56 for each worker, assuming one hundred percent class participation.  Here, the settlement proceeds have been allocated among the various subclasses so that claimants will receive appropriate payments based on the alleged harm they suffered.  For instance, if a claimant falls into more than one subclass, they will be entitled to receive a payment for each subclass in which they are a member.  The parties have agreed to terms for notice to the class and collective action members, as well as

notice to government entities under 28 U.S.C. §1715; a PAGA payment that is no less than 10% of the Net Settlement Amount (a minimum of $140,000); payment of fees to counsel in an amount not to exceed $765,900; reimbursement of counsel's costs in an amount not to exceed $30,000; payment of enhancement awards to the class representatives, not to exceed $5,000 each to Artiga, Sheehan, Rodriguez, Canas, Mendoza and Torres (collectively, "Plaintiffs")[3]; and settlement administration fees, estimated to be $91,500.

By way of this Motion, Plaintiffs seek an order for: (1) preliminary approval of the proposed settlement, including terms establishing a procedure for class members to submit claims, and/or consent to participate in the collective action proceeds, as well as to object or opt-out; (2) preliminary certification of the proposed class and subclasses for settlement purposes only; (3) preliminary certification of an FLSA collective action for purposes of notice; (4) approval of the form and method of providing class-wide notice; (5) appointment of Harris & Ruble as counsel for the settlement class and collective action ("class counsel"); (6) preliminary appointment of the class representatives and approval of incentive and/or enhancement awards for them; (7) preliminary approval of an application for attorneys' fees and costs; and (8) approval of the filing of the TAC.

The October 14, 2021 Settlement Agreement is attached as Exhibit 1 to the Harris Declaration, filed herewith.  Unless otherwise noted, capitalized terms herein have the meanings set forth in the Settlement Agreement. The Class Notice and Claim Form agreed to by the parties are attached as Exhibit B to the Settlement Agreement.

The settlement is fair under any circumstance, but particularly so in light of the admonition of the California Judicial Council:

Courts are further urged to work with justice partners to encourage and facilitate expeditious settlement, where possible, of cases pending before the

---

[3] The $5,000 "enhancement award" includes a payment of $2,000 to each Plaintiff on account of their services as a PAGA/Class Representative, plus an additional $3,000 as consideration for execution of a general release of claims.  Harris Decl., Ex. 1 at ¶ 18(c).

court, in compliance with applicable health and safety laws, regulations, and orders, including through the use of remote technology, when appropriate. Judicial Council of California, Statewide Emergency Order, Order of April 29, 2020, p. 4 (https://www.sfsuperiorcourt.org/general-info/Information-Regarding-Coronavirus-And-Court-Operations (last accessed October 18, 2021).)

The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declarations filed herewith; all of the pleadings, papers, and documents contained in the file of the within actions; and such further evidence and argument as may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on July 16, 2021 and on subsequent dates thereafter.

Dated:  October 18, 2021                            HARRIS & RUBLE

                                                                 Alan Harris
                                                                 *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................1

II.  PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT...........2

     A.   Procedural History....................................................................2

     B.   Settlement Terms.......................................................................3

III. CONDITIONAL CERTIFICATION IS APPROPRIATE...........................10

     A.   Class Certification Is Warranted ........................................12

     B.   The Settlement Meets The Requirements For Preliminary
          Approval...................................................................................20

     C.   Plaintiffs Satisfy The FLSA Collective Action Certification
          Standard ...................................................................................25

IV.  CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abdullah v. U.S. Sec. Associates, Inc.,
  731 F.3d 952 (9th Cir. 2013).................................................................................13

Allen v. Bedolla,
  787 F.3d 1218 (9th Cir. 2015).............................................................................10

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997).......................................................................................11, 17

Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,
  568 U.S. 455 (2013).............................................................................................17

Armstrong v. Davis,
  275 F.3d 849 (9th Cir. 2001)...............................................................................13

Arnold v. United Artists Theatre Circuit, Inc.,
  158 F.R.D. 439 (N.D. Cal. 1994).........................................................................14

Augustus v. ABM Sec. Servs., Inc.,
  2 Cal. 5th 257 (2016)...........................................................................................16

Beaver v. Tarsadia Hotels,
  2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)......................................................9

Bellinghausen v. Tractor Supply Co.,
  306 F.R.D. 245 (N.D. Cal. 2015).........................................................................24

Booth v. Strategic Realty Tr., Inc.,
  2015 WL 3957746 (Jun. 28, 2015) ......................................................................11

Brinker Rest. Corp. v. Superior Court,
  53 Cal. 4th 1004 (2012) ......................................................................................23

California Rural Legal Assistance v. Legal Servs. Corp.,
  917 F.2d 1171 (9th Cir. 1990)........................................................................14, 16

Chavez v. Netflix, Inc.,
  162 Cal. App. 4th 43 (2008) ..................................................................................9

Crawford v. Honig,
  37 F.3d 485 (9th Cir. 1994)..................................................................................19

Daar v. Yellow Cab Co.,
  67 Cal.2d 695 (1967).............................................................................................19

D'Alauro v. GC Servs. Ltd. P'ship,
  168 F.R.D. 451 (E.D.N.Y. 1996) .........................................................................11

Dunleavy v. Nadler,
  213 F.3d 454.......................................................................................11, 20, 24

Ellis v. Costco Wholesale Group,
  657 F.3d 970 (9th Cir. 2011)...............................................................................19

Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.,
   926 F.3d 539 (9th Cir. 2019)......................................................................12
Gen. Tel. Co. of the Southwest v. Falcon,
   457 U.S. 147 (1982) ...........................................................................14, 16
Gentry v. Superior Court,
   42 Cal.4th 443 (2007) ...............................................................................18
Hanlon v. Chrysler Corp.,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... Passim
In re Bluetooth Headset Prods. Liability Litig.,
   654 F.3d 935 (9th Cir. 2011).....................................................................10
In re Cooper Companies Inc. Sec. Litig.,
   254 F.R.D. 628 (C.D. Cal. 2009) ..............................................................13
In re High-Tech Emp. Antitrust Litig.,
   2013 WL 6328811 (N.D. Cal. Oct. 30, 2013).........................................20
In re NASDAQ Market-Makers Antitrust Litig.,
   187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................22
In re Tableware Antitrust Litig.,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ..............................................11, 20
In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.,
   2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ...........................................11
Johnson v. California,
   543 U.S. 499 (2005)..................................................................................13
Johnson v. Quantum Learning Network, Inc.,
   2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ........................................20
Khanna v. Inter-Con Sec. Sys., Inc.,
   2012 WL 4465558 (E.D. Cal. Sept. 25, 2012).........................................25
Linney v. Cellular Alaska P'ship,
   151 F.3d 1234 (9th Cir. 1998)...................................................................11
Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
   244 F.3d 1152 (9th Cir. 2001)...................................................................19
Lusby v. Gamestop Inc.,
   297 F.R.D. 400 (N.D. Cal. 2013)..............................................................20
Mazur v. eBay Inc.,
   257 F.R.D. 563 (N.D. Cal. 2009) .............................................................12
Mazza v. Am. Honda Motor Co.,
   666 F.3d 581 (9th Cir. 2012).....................................................................13
McGrath v. Wyndham Resort Dev. Corp.,
   2018 WL 637858 (S.D. Cal. Jan. 30, 2018).............................................9
Mitchell v. Acosta Sales, LLC,
   841 F. Supp. 2d 1105 (C.D. Cal. 2011) ...................................................25
Nat'l Telecommunications Coop. v. DIRECTV, Inc.,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................22, 23

1

Officers for Justice v. Civil Serv. Comm.,
  688 F.2d 615 (9th Cir. 1982)............................................................11
Ordonez v. Radio Shack, Inc.,
  2013 WL 210223 (C.D. Cal. filed Jan. 17, 2013).............................23
Rannis v. Recchia,
  380 Fed. Appx. 646 (9th Cir. 2010)..................................................12
Rodriguez v. Gates,
  2002 WL 1162675 (C.D. Cal. 2002).................................................12
Rodriguez v. Hayes,
  591 F.3d 1105 (9th Cir. 2010)...........................................................19
Rodriguez v. West Publ'g Corp.,
  563 F.3d 948 (9th Cir. 2009)....................................................8, 9, 22
Rodriguez v. West Publ'g Corp.,
  2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007) ...................22, 24
Spann v. J.C. Penney Corp.,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..............................................9
Staton v. Boeing Co.,
  327 F.3d 938 (9th Cir. 2003)..............................................11, 13, 14
Stetson v. Grissom,
  821 F.3d 1157 (9th Cir. 2016)...........................................................10
Taylor v. Union Carbide Corp.,
  93 F.R.D. 1 (S.D. W. Va. 1980).........................................................14
Thompson v. Costco Wholesale Corp.,
  2017 WL 697895 (S.D. Cal. 2017)....................................................25
Wal-Mart Stores, Inc. v. Dukes,
  564 U.S. 338 (2011)............................................................10, 13, 23
Walters v. Reno,
  145 F.3d 1032 (9th Cir. 1998)...........................................................19
Wehner v. Syntex Corp.,
  117 F.R.D. 641 (N.D. Cal. 1987)................................................15, 16
Wofford v. Safeway Stores, Inc.,
  78 F.R.D. 460 (N.D. Cal. 1978).........................................................14
Yokoyama v. Midland Nat'l Life Ins. Co.,
  594 F.3d 1087 (9th Cir. 2010)...........................................................18

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...........................................................2
Cal. Lab. Code § 201.3(a)(1) ..............................................................21
Cal. Lab. Code § 226(e)(1) .................................................................15

**Rules**

Fed. R. Civ. P. 23(a).................................................................................................12
Fed. R. Civ. P. 23(a)(2)....................................................................................13, 17
Fed. R. Civ. P. 23(a)(3)....................................................................................14, 16
Fed. R. Civ. P. 23(a)(4).............................................................................................19
Fed. R. Civ. P. 23(b)........................................................................................12, 17
Fed. R. Civ. P. 23(b)(3)............................................................................12, 13, 17
Fed. R. Civ. P. 23(c)(1).............................................................................................22
Fed. R. Civ. P. 23(e)(2).............................................................................................21
Fed. R. Civ. P. 23 (e)....................................................................................10, 11, 20
Fed. R. Civ. P. 23(e)(3).............................................................................................21

**Other Authorities**

4 Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u> § 11:50 (4th ed. 2002) ...22
7A Charles Alan Wright et al., Federal Practice & Procedure § 1777 (2d ed. 1986) .......17
<u>Sibert v. TV Magic, Inc.</u>,

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs and Defendant ABM Industry Groups, LLC ("ABM") have reached a settlement of the collective action, class-wide and representative claims alleged in this case.[4] The gross settlement value of the compromise is $2,300,000. ABM will also make an additional payment, outside of and in addition to the gross settlement fund, for payroll taxes. The approximate gross recovery for each of the class members, assuming one hundred percent participation is a little over fifty-six dollars ($2,300,000 [settlement value]/40,595 [number of workers]). The Settlement also provides that no less than ten percent of the Net Settlement Amount shall be allocated for payment of PAGA penalties. Assuming all requested payments are approved by the Court, the estimated Net Settlement Amount is $1,383,500.[5]  Therefore a minimum of $138,350 shall be allocated for PAGA, 75% of which shall be paid to the Labor & Workforce Development Agency ("LWDA") and 25% of which shall be allocated to participating class members.  Further, as a result of this lawsuit, as of May, 2021 ABM ended its uniform deposit program for hourly employees in California and its counsel have advised the undersigned that this effort has included the return of some $80,000 in uniform deposits, including interest, which ABM held with respect to current hourly employees in California. Harris Decl. ¶ 9. In addition, ABM continues to roll out wage and hour training and reminders to ABM's staff and management employees in California. The most recent annual online wage and hour training was rolled out to ABM's staff and management employees in March of 2021. ABM also developed an annual California-specific meal and rest break training

---

[4] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Joint Stipulation of Class Action Settlement Agreement and Release (the "Settlement").  The Settlement is Exhibit 1 to the Harris Decl. filed herewith. The Harris Declaration includes extensive analysis of the relationship between the total potential recovery in this case and the amounts offered in the Settlement.

[5] The estimated claims administration cost is $91,500 and the Settlement provides that Plaintiffs may apply to the Court for an award of attorneys' fees of up to 33.3% of the Settlement Amount ($765,000) and costs not to exceed $30,000.  Plaintiffs may also apply to the Court for enhancement awards totaling $30,000 for the six proposed class representatives.

1   that was rolled out to ABM's staff and management employees in California in

2   December of 2020. These trainings include stressing the importance of taking

3   uninterrupted meal and rest breaks, and of payment for all hours worked.  ABM also

4   continues to improve its payroll processes so that paystubs are complete and accurate. As

5   detailed below, and in the Harris Declaration, the Settlement provides substantial relief to

6   participating Class Members for their claims.  This non-reversionary Settlement has a

7   narrowly crafted class release.  Plaintiffs now respectfully move for preliminary approval

8   of the Settlement and conditional certification of the Settlement Class.

9   **II.    PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT**

10          **A. Procedural History**

11          This is a PAGA law enforcement action, class action and Fair Labor Standards Act

12  collective action, seeking unpaid wages, damages, penalties and attorneys' fees and costs,

13  against ABM.[6]  Plaintiffs' operative July 7, 2020 Second Amended Complaint ("SAC")

14  [ECF Doc. 96] was filed after the Court's ruling on Defendant's Rule 12(b)(6) Motion to

15  Dismiss the First Amended Complaint.  The SAC alleges the following claims against

16  Defendant ABM:  (1) failure to provide wage statements that supplied all of the

17  information required by Code § 226(a); (2) failure to pay minimum wages in violation of

18  Code § 1194 and the IWC Wage Order; (3) failure to pay minimum wages under the Fair

19  Labor Standards Act; (4) failure to timely pay all wages due at the time of termination of

20  employment; (5) failure to provide proper meal breaks to Plaintiffs Rodriguez and

21  Sheehan and other Aggrieved Employees; (6) failure to provide proper rest breaks to

22  Plaintiffs Rodriguez and Sheehan and other Aggrieved Employees; (7) violation of Cal.

23  Bus. & Prof. Code § 17200; and 8) claim for PAGA penalties.

24

25  [6] On August 28, 2018, Plaintiff Artiga provided statutory notice to the LWDA and to
    Defendant of the claims set forth in this complaint.  On October 11, 2019, Plaintiffs
26  Rodriguez and Sheehan provided statutory notice to the LWDA and to Defendant of the
    claims set forth in this complaint. In <u>Canas</u>, notice was provided to the LWDA and to
27  Defendant on May 13, 2020.  Harris Decl., Ex. E, STLMT-191; Ex. G, STLMT 288-290;
    and Ex. J, STLMT-414-415.
28

On March 18, 2021 the parties attended a private mediation with Ninth Circuit Mediator Roxanne Ashe. After mediation, the parties continued to negotiate, including several further settlement discussions with Mediator Ashe.  In July, 2021, the parties reached a preliminary agreement to settle this case, which was documented in the July 16, 2021 Memorandum of Agreement.  The parties subsequently negotiated a long form settlement agreement and that settlement is now before the Court for preliminary approval. (Harris Decl., Ex. 1.)

The parties have engaged in significant briefing in this case and investigation of the facts at issue, and have exchanged extensive documents and data, all of which allowed the Parties to fully assess the value of the claims involved.  This Agreement comes after more than two years of litigation, substantial motion practice and intense settlement negotiations, including a full day of mediation and many subsequent conference calls and follow up conferences with Ninth Circuit Mediator, Roxanne Ashe.

This settlement will also operate to resolve the PAGA claim asserted in <u>Canas v. ABM Industries, LLC</u>, Case No. 20STCV (filed September 30, 2020), currently pending in Los Angeles Superior Court.  The Settlement contemplates the filing of a Third Amended Complaint which includes Mr. Canas as a plaintiff in this action, along with Lorenza Torres and Jaime Mendoza.  Harris Decl., Ex. A, STLMT 44-144. The parties' Stipulation to the filing of a Third Amended Complaint is concurrently filed with this Motion.  Plaintiffs and their counsel have concluded that the Settlement reflected herein is fair, reasonable, and in the best interests of the Settlement Class and respectfully request that the Settlement be approved.

**B. Settlement Terms**

**1. The Gross Settlement Amount and Net Settlement Amount**

Again, the gross settlement value of the Settlement Agreement is $2,300,000. The settlement amount is non-reversionary.  Subject to this Court's approval, the Gross Settlement Amount will be used to pay the costs of delivering the Class Notice and the Claim Form to the Settlement Class, as well as to pay attorney's fees and costs to Class

1  Counsel, and Enhancement Awards to Plaintiffs and the Proposed Plaintiffs.[7] The

2  remainder of funds after accounting for the above payments will constitute the "Net

3  Settlement Amount" ("NSA").

4       The NSA will be distributed to the LWDA and Settlement Class members who do

5  not "opt out" of the settlement and who submit valid and timely Claim Forms. (Harris

6  Decl., Ex. 1 at p. 7, ¶ m.)  The parties have agreed to allocate no less than ten percent of

7  the Net Settlement Amount to resolve all claims in the action under PAGA.  Pursuant to

8  PAGA, 75% of the PAGA allocation shall be paid to the LWDA, with the remaining 25%

9  to be distributed to PAGA Settlement Group members.  Taking into account the

10  requested enhancement awards to Plaintiffs and potential Plaintiffs (a total of $30,000),

11  the maximum amount of attorney's fees and costs permitted to be awarded under the

12  Settlement ($765.000 and $30,000), and the estimated costs of claims administration

13  ($91,500), **the NSA is estimated to be, at minimum, $1,383,500** ($2,300,000 Gross

14  Settlement Value - $30,000 enhancement awards - $765,000 attorney's fees - $30,000

15  attorney's costs – $91,500 claims administration costs).  Based on the estimated NSA, the

16  minimum PAGA allocation is $138,350, or 10% of the NSA.

17       **2.  The Proposed Subclasses and Allocation of Funds**

18       The Net Settlement Amount is allocated among the various subclasses so that

19  participating claimants will receive payments related to the alleged harm they suffered.  If

20  a claimant falls into more than one subclass, they will be entitled to receive a payment for

21  each subclass in which they are a member.  The chart below sets forth the proposed

22  subclass definitions, the proposed allocation of funds among the groups and the estimated

23  payouts to each subclass.[8]

| Subclass Definition and Estimated Size | Fund Allocation Formula | Estimated Payout based on the assumption of a 20% |
|---|---|---|

---

[7] As part of the Settlement, the parties have agreed to the filing of a Third Amended Complaint which includes the claims of additional Plaintiffs and Class Representatives, Canas, Torres and Mendoza.  (Harris Decl., Ex. 1 at p.3: 12-26.)

[8] Based on experience, the estimated claims participation rate will likely not exceed twenty percent.  (Harris Decl., ¶ 9.)

| | | claims participation rate |
|---|---|---|
| **New Hire Wage Subclass**:<br><br>All non-exempt California employees of ABM and its predecessors, who were hired during the period from October 14, 2015 to the earliest of December 31, 2021, or preliminary approval of the Stipulation of Settlement (the "Term Date"). ABM represents that as of October 2021 there are 29,649 New Hire Wage Class members. | Each claimant will receive $21, with each eligible employee who opts into the FLSA collective action, an additional $10, each. | Assuming 5,930 participating claimants who are FLSA opt ins as well, the total claimed would be $183,830 (=$31*5,930) |
| **Wage Statement Settlement Subclass**:<br><br>All non-exempt California employees of ABM from October 14, 2015 to the Term Date. ABM represents that as of October 2021 there are 31,361 Wage Statement Settlement Subclass members. | Each claimant will receive $50. | Assuming 6,272 participating claimants, the total claimed would be $313,600 (=$50* 6,272 participating claimants) |
| **Former Employee Uniform Deposit Settlement Subclass**:<br><br>All California employees of ABM and its predecessors, with uniform deposits on file, who separated between June 4, 2015 and May 7, 2021, the date ABM terminated its uniform deposit program. ABM represents that there are 2,908 Former Employee Uniform Deposit Settlement Subclass members. | Each claimant will receive $50. | Assuming 582 participating claimants, the total claimed would be $29,100 (=$50 * 582 participating claimants) |

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

| | | |
|---|---|---|
| **<u>Current Employee Uniform Deposit Settlement Subclass</u>:**<br><br>All California employees of ABM, with uniform deposits on file, who were active as of May 7, 2021, the date ABM terminated its uniform deposit program.  ABM represents that there are 843 Current Employee Uniform Deposit Settlement Subclass members. | Upon termination of its uniform deposit program, ABM returned over $80,000 in uniform deposits, with interest, to this settlement subclass via payroll. Settlement subclass will automatically participate in the PAGA payment without need for making a claim. | See PAGA allocation below |
| **<u>Supervisor Meal and Rest Break Settlement Subclass</u>:**<br><br>All non-exempt California supervisors and leads of ABM and its predecessors, from October 14, 2015 to the Term Date. "Supervisors and Leads" shall be defined as all non-exempt employees with the term "Manager," "Supervisor," "Lead" or "Foreperson" in their job description field according to ABM records. ABM represents that as of October 2021 there are 2,650 Supervisor Meal and Rest Break Settlement Subclass members.  As of October 2021, the number of pay periods for this subclass is 118,671. | Each claimant will receive $20 per pay period worked. | Assuming 530 Supervisors with 29,734 pay periods participate, the total would be $474,680 (=$20 * 29,734). |

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

| PAGA Settlement Group: All California allegedly aggrieved employees in the Actions from August 28, 2017 to the Term Date. "Allegedly aggrieved employees" shall be defined as all employees within the scope of the PAGA letters submitted by Plaintiffs. ABM represents that as of October 2021 there are 36,717 PAGA Settlement Group members. | No less than 10% of the Net Settlement Amount, distributed 75% to the LWDA and 25% equally distributed to claimants who are in the PAGA Settlement Group. | From the estimated net settlement amount of $1,383,500, if twenty percent of the subclasses make claims, the total PAGA payment will be $382,290<br><br>The proceeds will be distributed 75% to the LWDA: $286,717<br><br>The remaining 25% will be distributed to participating PAGA Settlement Group members: $95,572<br><br>Assuming overall 20% participation, each of the 7,343 claimants will receive some $13.15 in addition to the additional amounts, described above. |
|---|---|---|

As described above, assuming a 20% claims rate, the total claims will be $1,001,210 (=$183,830+$313,600+$29,100+$474,680), resulting in no pro rata reductions to subclass members and an increase in the PAGA recovery to a total of $382,290 -- $243,940 more than the minimum PAGA allocation. If the claims made by Qualified Claimants do not exhaust the Net Settlement Amount, the differential will be added to the PAGA allocation. If the claims made by qualified claimants exceed the Net Settlement Amount, the payments to qualified claimants shall be reduced on a pro-rata basis. (Harris Decl., Ex. 1 at p. 22, ¶ 19.) Based on plaintiff counsel's analysis of the unpaid wages, damages, penalties and civil penalties at issue in this case, counsel has concluded that the settlement is fair to the Class. (Harris Decl., ¶ 11.)

The Settlement is sufficient to provide Plaintiffs and qualified claimants substantial recovery for their claims. The settlement has been structured to allocate appropriate relief to the qualified claimants based on the nature of their claims: members of the New Hire Wage Subclass who submit claims will be compensated for 100% of their alleged lost wages due to the Defendant's alleged failure to compensate them for time spent

during required new hire orientations; claimants in the Wage Statement Subclass will receive a reasonable recovery of penalties due to Defendant's alleged failure to provide adequate wage statements; claimants in the Former Employee Uniform Deposit Subclass will receive substantially 100% of the interest they are entitled to receive for this claim; claimants in the Current Employee Uniform Deposit Subclass have already benefited from this lawsuit as ABM ceased its uniform deposit program and returned uniform deposits to these workers, as well as the interest that had accrued.  Therefore claimants in this group will share in the PAGA payment allocation; claimants in the Supervisor Meal and Rest Break Subclass will receive payments based on the pay periods they worked so that claimants who suffered more alleged violations will receive a greater payout.  The payment of $20 per claimant per pay period is a substantial amount in recognition of Defendant's alleged failure to pay premium wages to these subclass members on account of the failure to properly provide all rest periods and meal breaks.  In a case seeking recovery of unpaid wages, it is appropriate to substantially discount penalties and civil penalties, or to entirely exclude them from the analysis, as in <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 964 (9th Cir. 2009). Here, no Code §203 penalties are being made as additional payments to former employees, and PAGA civil penalties are substantially reduced to $10,000.

### 3.  Settlement Administration

Plaintiffs sought bids for settlement administration from qualified companies and request that the Court appoint CPT Group, Inc. to act as the settlement administrator to perform notification services and claims administration pursuant to the terms of the Settlement Agreement.  (Harris Decl., ¶ 20.)  The deadline for claims, objections, and opt-outs will be sixty (60) days after class notice is sent, a notice designed to provide the best notice practicable.  (Harris Decl., Ex. 1, p. 6, ¶1(h).)  If more than five percent of the Settlement Class Members opt-out, Defendant, in its sole election, has the right to void this agreement and all rights and obligations contained therein. In such case the Parties shall return to their respective previous positions prior to entry of this Agreement and

Defendant agrees to bear all settlement administration costs incurred up to the date of nullification. (Harris Decl., Ex. 1, p. 15, ¶ 12.)

### 4. Enhancement Awards and Reimbursement Fees and Costs

Plaintiffs will petition the court for class representative enhancement awards (not to exceed $5,000 each.[9] According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d at 958–59 (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012). The incentive awards requested here are reasonable in light of the work pursuing this action with counsel.  The declarations of Plaintiffs and Proposed Plaintiffs submitted herewith detail their efforts in connection with this case.

Defendant has also agreed not to oppose Class Counsel's application for an award of attorney's fees and reimbursement of actual litigation expenses.  Pursuant to the terms of the Settlement Agreement, Class Counsel intend to apply for an award of attorney's fees in an amount not to exceed $765,000 to Class Counsel, as well as an award of actual costs of no more than $30,000 as awarded by the Court.[10]  Plaintiffs' counsel should be awarded their requested fee.  This litigation and the culminating settlement has resulted in a substantial cash recovery, resolving two cases, in state and federal courts.  Indeed, since the underlying claims at issue here are largely state-law claims, "California law governs this fee application because where state law claims predominate, state law applies to determine the right to fees and the method of calculating them"—and the federal 25% "benchmark" should not apply here since, "[u]nder the percentage method, California has

---

[9] Plaintiffs and Proposed Plaintiffs request enhancement awards of $5,000 each, which consists of a $2,000 payment in exchange for their services as PAGA/Class Representatives as well as a $3,000 payment as consideration for a broad general release of their claims.  Harris Decl., Ex. 1 at pp.19-20, ¶ 18(c).

[10] Harris Decl., Ex. 1 at pp. 18-19, ¶¶ 18(a) and (b).

recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent." <u>Beaver v. Tarsadia Hotels</u>, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017).[11]   A court overseeing a class-wide settlement in federal actions, such as under the FLSA, "has discretion to apply either a lodestar method or the percentage-of-the-fund method in calculating a fee award." <u>Stetson v. Grissom</u>, 821 F.3d 1157, 1165 (9th Cir. 2016) (internal quotation marks omitted).  Regardless, though, of which method is selected, or whether state or federal law applies, courts in the Ninth Circuit should "cross-check[] their calculations against [the non-selected] method" to assure themselves that the calculated fee is reasonable. <u>In re Bluetooth Headset Prods. Liability Litig.</u>, 654 F.3d 935, 944 (9th Cir. 2011).  Accordingly, "even though the lodestar method may be a perfectly appropriate method of fee calculation. . . courts [are] to guard against an unreasonable result by cross-checking their calculations against a second method." <u>Id.</u>

In any event, the Settlement Class Members will be given an opportunity to object to Class Counsel's requested attorney's fees, and the Court will have an opportunity to address the fee award after Class Counsel have filed the necessary fee petition.

## III.   CONDITIONAL CERTIFICATION IS APPROPRIATE

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." <u>Allen v. Bedolla</u>, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).[12]

---

[11] <u>See also</u> <u>McGrath v. Wyndham Resort Dev. Corp.</u>, No. 15cv1631 JM (KSC), No. 15cv1631 JM (KSC), 2018 WL 637858, at *7–8 (S.D. Cal. Jan. 30, 2018) (explaining that, "[u]nder California law, which applies here, attorneys' fees in class action cases may be calculated in one of two ways:  the percentage method . . . or the lodestar method," and that the typical fee award under California law is "one-third of the common fund"); <u>Spann v. J.C. Penney Corp.</u>, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (stating that, "[i]n diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating them," and that "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions [subject to California law] average around one-third of the recovery'") (quoting <u>Chavez v. Netflix, Inc.</u>, 162 Cal. App. 4th 43, 66 n.11 (2008)).
[12] In light of the predominance of state law claims in these cases, it is appropriate for this Court to give due consideration to the California Statewide Emergency Order, Order of

Federal Rule of Civil Procedure 23(e) requires district court approval of class action settlements. "[S]ettlement class actions present unique due process concerns for absent class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by* Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011). Concerns about the rights of absent Settlement Class Members can be dispelled by the Court's review of the Settlement Agreement and by the procedural protections provided by Rule 23. Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). A trial court has wide discretion in certifying a class for settlement purposes and will be reversed "'only upon a strong showing that [its] decision was a clear abuse of discretion.'" Dunleavy v. Nadler, 213 F.3d 454, 461 (quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)). In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements involves a two-step inquiry. In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig., 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). In the first step, courts decide if a class exists. Staton, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). In the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." Id. During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" Booth v. Strategic Realty Tr., Inc., 2015 WL 3957746, at

April 29, 2020, p. 4 (https://www.sfsuperiorcourt.org/general-info/Information-Regarding-Coronavirus-And-Court-Operations (last accessed October 18, 2021).)

1  *6 *N.D. Cal. Jun. 28, 2015) quoting <u>In re Tableware Antitrust Litig.</u>, 484 F.Supp.2d

2  1078 (N.D. Cal. 2007)).  Courts examine "the settlement taken as a whole, rather than the

3  individual component parts. . . for overall fairness." <u>Hanlon</u>, 150 F.3d at 1026.

**A. Class Certification Is Warranted**

5        Class actions are favored, and Rule 23 is to be given a broad interpretation in favor

6  of maintaining class actions.  <u>Labbate-D'Alauro v. GC Servs. Ltd. P'ship</u>, 168 F.R.D.

7  451, 454 (E.D.N.Y. 1996).  Rule 23 requires the party seeking certification to satisfy all

8  four requirements of Rule 23(a)[13] and at least one of the subparagraphs of Rule 23(b).

9  Here, Plaintiff seeks certification under Rule 23(b)(3). As explained in <u>Espinosa v.</u>

10  <u>Ahearn (In re Hyundai & Kia Fuel Econ. Litig.</u>, 926 F.3d 539 (9th Cir. 2019) (*en banc*):

11        The criteria for class certification are applied differently in litigation classes

12        and settlement classes.  In deciding whether to certify a litigation class, a

13        district court must be concerned with manageability at trial.  However, such

14        manageability is not a concern in certifying a settlement class where, by

15        definition, there will be no trial.

16  <u>In re Hyundai</u>, 926 F.3d at 556-57.

**1.  Numerosity**

18        Here, the numerosity requirement is met.  Again, there are approximately 38,037

19  Settlement Class Members with the smallest subclass consisting of 843 individuals.[14]

[13] Rule 23(a) contains the following certification requirements:
(i)     The class is so numerous that joinder of all members is impracticable;
(ii)    There are questions of law and fact common to the class;
(iii)   The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(iv)    The representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).
[14] "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." <u>Mazur v. eBay Inc.</u>, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition should be precise, objective and presently ascertainable." <u>Id.</u> (citing <u>Rodriguez v. Gates</u>, 2002 WL 1162675, *8 (C.D. Cal. 2002).  Here, Defendant maintain records identifying each of the class members.

Given that "courts will typically find the numerosity requirement satisfied when a class includes 40 or more members," Sibert v. TV Magic, Inc., 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) (citing Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010), and given that common sense indicates that joinder of all Class Members would be "impracticable," the Class is sufficiently numerous to justify certification.

## 2. Commonality

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) cert. denied, 135 S. Ct. 53, 190 L. Ed. 2d 30 (2014). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of law or fact." Id. Rule 23(a)(2), in other words, is construed "permissively," with the analysis thereunder proceeding far less rigorously than that under Rule 23(b)(3), discussed *infra*. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) Compare Fed. R. Civ. Proc. 23(b)(3) (requiring that common questions of law or fact "predominate" in class actions maintained under this subsection) with Fed. R. Civ. Proc. 23(a)(2) (not including "predominate" or similar language in describing the general commonality requirement). Accordingly, it is sufficient for class members to share legal issues but divergent facts or, similarly, to share a common core of facts but to base their claims for relief on different legal theories. Hanlon, 150 F.3d at 1019. In re Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[A] few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of salient facts'") (quoting Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003)). In point of fact, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal," Id. at l020, and for the party to have only "a single *significant* question of law or fact." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). See

1   also Wal-Mart Stores, Inc., 564 U.S. 338, 359 ("We quite agree that for purposes of Rule

2   23(a)(2) "'even a single [common] question'" will do.") (brackets in original).

3        Commonality is readily satisfied where a "lawsuit challenges a system-wide

4   practice or policy that affects all putative class members." Armstrong v. Davis, 275 F.3d

5   849, 868 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S.

6   499, 504-05 (2005). Such system-wide policies and practices are present in this action for

7   the Settlement Class, including: (i) whether Defendant's practice of deducting uniform

8   deposits from the paychecks of employees and failing to hold those funds in a segregated,

9   interest bearing account with accrued interest paid to terminated employees is unlawful;

10   (ii) whether Defendant's new hire orientation sessions were compensable; (iii) whether

11   Defendant's wage statements complied with Labor Code section 226; and (iv) whether

12   Defendant failed to provide Lead and Supervisors who were allegedly required to have

13   radios operating at all times with proper meal and rest breaks.  Whether these common

14   matters violate the law can be determined in a single action for all employees.

15       **3. Typicality**

16        Rule 23(a)(3) requires that "the claims . . . of the representative part[y be] typical

17   of the claims . . . of the class." Fed. R. Civ. Proc. 23(a)(3).  The Ninth Circuit also

18   interprets this requirement permissively.  Hanlon, 150 F.3d at 1020.  Typicality requires

19   that the named plaintiffs be members of the classes that he or she seek to represent and

20   that he or she "possess the same interest and suffer the same injury" as class members.

21   Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982).  The named

22   plaintiff's claims need not be identical to the claims of the class; instead, the claims need

23   only be "reasonably co-extensive with those of absent class members."  Hanlon, 150 F.3d

24   at 1020.  It is sufficient for the plaintiff's claims to "arise from the same remedial and

25   legal theories" as the class' claims.  Arnold v. United Artists Theatre Circuit, Inc., 158

26   F.R.D. 439, 449 (N.D. Cal. 1994); California Rural Legal Assistance v. Legal Servs.

27   Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (explaining that class representatives and

28   members of the class need only "share a common issue of law or fact").  For this reason,

Rule 23(a)(3) does not require a class representative for each job category or location that may be included in a class.  <u>Staton</u>, 327 F.3d at 957 (rejecting the defendant's argument that typicality requires plaintiffs to "provide clear documentation that each job category had a class representative"); <u>Taylor v. Union Carbide Corp.</u>, 93 F.R.D. 1, 6 (S.D. W. Va. 1980); <u>Hartman v. Duffey</u>, 19 F.3d 1459, 1471–72 (D.C. Cir. 1994). <u>Cf.</u> <u>Wofford v. Safeway Stores, Inc.</u>, 78 F.R.D. 460, 488 (N.D. Cal. 1978) ("Factual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory."); <u>Wehner v. Syntex Corp.</u>, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ("Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory.").  All that is required is that the representative —the named plaintiff—be similarly situated so that he or she will have the incentive or motive to litigate on behalf of all class members.

The only claims that the proposed Class Representatives seek to represent are the claims of others who, like them, were subject to the alleged violations in this case.  At least one or more of the Plaintiffs suffered each violation and are members of the proposed Class and Subclasses[15]:

a.    **New Hire Wage Subclass**:  Plaintiffs Sheehan, Rodriguez, as well as proposed representatives Canas, Torres and Mendoza all attended new hire orientation sessions during the relevant class period but claim they were not compensated for their time spent during those sessions.  Sheehan Decl., ¶¶ 2-3; Rodriguez Decl., ¶¶ 2-3; Canas Decl. ¶ 3; Torres Decl. ¶ 5; Mendoza Decl., ¶ 6  Qualified claimants in the New Hire Wage Subclass may receive $31, each.  This is a fair compromise payment which will provide payment of about two hours of off-the-clock work. (Harris Decl., ¶9, Ex. 1, p. 22, ¶ g(i).)

b.    **Wage Statement Settlement Subclass:**  Each of the Plaintiffs and proposed

---

[15] Each of the Plaintiffs and proposed Plaintiffs are also members of the PAGA Settlement Group, with Plaintiffs Artiga, Sheehan, Rodriguez and proposed Plaintiff Canas acting as PAGA representatives as they submitted notice of their PAGA claims within the statutory period.  (Harris Decl., Ex. 1 at Exs. E, G, and J.

Plaintiffs received wage statements that were substantially identical in format.  Qualified claimants in this Subclass may receive $50, each.  Again, this is a fair compromise penalty payment, representing payment for an initial wage statement violation under Cal. Lab. Code § 226(e)(1).  (Harris Decl., ¶9 Ex. 1, p. 22, ¶ g(ii).)

   **c.   Uniform Deposit Settlement Subclasses (Current/Former):**  Plaintiff Artiga and proposed representative Canas were both required to wear uniforms during the course of their work and both had uniform deductions taken from their paychecks during their employment.  Qualified claimants who are former ABM employees may receive $50, each.  In most cases, this payment will represent over 100% of the interest owed to the former employees.  As current employees in this group have already been paid 100% of their uniform deposits and owed interest as a result of this lawsuit, they will get to share in the payment allocated for PAGA penalties. (Harris Decl., ¶9 Ex. 1, p. 22,  ¶ g(iii) and (iv).)

   **d.   Supervisor Meal and Rest Break Settlement Subclass:**  Rodriguez and Sheehan were supervisors and/or leads during the relevant class period. Defendant allegedly required them to be accessible via telephone or walkie-talkie at all times during the workday. In violation of <u>Augustus v. ABM Sec. Servs., Inc.</u>, 2 Cal. 5th 257, 269 (2016), they claim they were required to be "on duty" during meal and rest breaks. Qualified claimants in this Subclass may receive $20 for each week worked during the class period.  This payment represents approximately one meal/rest period premium payment for each week—a substantial payment.  The payment based on weeks worked is fair as those employees who suffered a greater number of violations will receive a larger payment. (Harris Decl., ¶9 Ex. 1, p. 23 ¶g(v).)

   Common issues permeate this action.  The U.S. Supreme Court has stated that Rule 23(a)(3)'s typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily supports a finding of typicality.  <u>Gen. Tel. Co. of the Sw.</u>, 457 U.S. at 157 n.13; <u>Wehner</u>, 117 F.R.D. at 644 (observing a "necessary overlap of the provisions of Rule 23"); <u>Cal. Rural Legal Assistance</u>, 917 F.2d at 1175 ("Fed. R. Civ. P.

23 . . . does not require the named plaintiffs to be identically situated with all other class members.  It is enough to share a 'common issue of law or fact.'") (internal citations omitted).  Because Plaintiffs possess the same interests, have suffered the same injury, and allege identical violations to other Class Members, typicality exists.

### 4. Predominance and Superiority

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b). Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3).  The predominance inquiry is whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).  The inquiry "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)," and focuses on whether the "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." If the question or questions are significant for the proposed class, they predominate and, "there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) overruled on other grounds (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure § 1777 (2d ed. 1986)). While the commonality inquiry asks whether the class shares issues capable of resolution through common proof, the predominance inquiry asks whether resolving those common issues is apt to drive the case's resolution, or instead, whether individual inquiries are going to overwhelm common questions. Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455; 469 (2013).  Here, there is nothing to indicate that individual inquiries could "overwhelm" the common questions which are drivers of each subclass.

The superiority requirement ensures that classes will only be certified under Rule

23(b)(3) if they will "achieve economies of time, effort, and expense, and promote . . .

uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results."  <u>Amchem</u>, 521 U.S. at 615 (internal

quotations and citation omitted).  With respect to superiority, there can be no question but

that resolution of this case and the related <u>Canas</u> case pending in state court will achieve

economies of time and assure uniformity of decision.

Plaintiffs contend that the core common questions in this case—the lawfulness of

Defendants' policies and practices with respect to uniform deductions, new hire

orientations and payment of wages, supervisor meal periods and rest breaks, and

paystubs, predominate over any differences with respect to implementation of those

policies and practices. As such, this Court should conclude that common questions of law

and fact predominate. As noted with respect to the commonality requirement, a central

issue in this case is the legality of Defendants' policies.  Notably, individual

determinations on damages do not defeat class certification.  <u>See</u> <u>Yokoyama v. Midland</u>

<u>Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential

existence of individualized damage assessments, however, does not detract from the

action's suitability for class certification," and explaining "that '[t]he amount of damages

is invariably an individual question and does not defeat class action treatment'"). There is

no issue regarding procedural unfairness, when the alternative to class-wide settlement is

the near certainty that the overwhelming majority of the workers will never receive any

recovery, at all.

A class action is also superior where individuals may forgo pursuing otherwise-

meritorious claims due to the fear of retaliation. This chilling effect is uniquely present in

employment actions. In <u>Gentry v. Superior Court</u>, 42 Cal.4th 443 (2007), the California

Supreme Court recognized that "retaining one's employment while bringing formal legal

action against one's employer is not a viable option for many employees." <u>Id.</u>, at 459.

"[F]ederal courts have widely recognized that fear of retaliation for individual suits

against an employer is justification for class certification in the arena of employment

litigation, even when it was otherwise questionable that the numerosity requirement of Rule 23 were satisfied." <u>Id.</u>, at 460. "[F]ear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." <u>Id.</u>, at 460. Finally, the wages due to any one employee may well be insufficient to attract counsel who are ready, willing, and able to prosecute individual cases. The blessing of class and collective actions are that they incentivize counsel to litigate such claims that might otherwise be abandoned. This is particularly important in actions to vindicate wage and hour rights. The class procedure may be the only method by which these claims can be resolved. Indeed, in such a case, recovery by any individual is unlikely. "[A]bsent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover . . . is preferred over the forgoing." <u>Daar v. Yellow Cab Co.</u>, 67 Cal.2d 695, 715 (1967).

### 5.  Adequacy

Representative parties must also fairly and adequately protect the interests of the class. <u>See</u> Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting <u>Walters v. Reno</u>, 145 F.3d 1032, 1046 (9th Cir. 1998) and <u>Crawford v. Honig</u>, 37 F.3d 485, 487 (9th Cir. 1994)); <u>see Ellis</u>, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); <u>see also</u> <u>Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them. The Rule does not require more.").

1  Plaintiffs and proposed Plaintiffs are adequate class representatives. The alleged

2  fact-pattern for each of them are similar, if not identical, to the fact-pattern for other

3  Settlement Class Members. Plaintiffs and proposed Plaintiffs have no conflicts of

4  interest with Settlement Class Members, as they share their desire to be paid in full.

5  Additionally, Plaintiffs are committed to pursuing the claims of the Settlement Class, and

6  their motivation in retaining counsel and pursuing this action has been to seek

7  reimbursement for themselves and Settlement Class Members. (Harris Decl., ¶ 21.)

8  Counsel have no conflict of interest with Settlement Class Members and have

9  diligently prosecuted this action, as well as the related Canas action, on behalf of the

10  class over more than two years. Counsel has diligently researched the facts of this case,

11  interviewing numerous current and former employees of Defendant, opposed multiple

12  potentially dispositive motions, and handled the matter on appeal. (Harris Decl., ¶ 22.)

13  **B.    The Settlement Meets The Requirements For Preliminary Approval**

14  "[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the

15  proposed settlement made by the court on the basis of written submissions and informal

16  presentation from the settling parties." In re High-Tech Emp. Antitrust Litig., 2013 WL

17  6328811, at *1 (N.D. Cal. Oct. 30, 2013). A court need not conduct a complete analysis

18  of the fairness factors at this time because "some of these 'fairness' factors cannot be

19  fully assessed until the Court conducts the final approval hearing[.]" Lusby v. Gamestop

20  Inc., 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval

21  of a settlement and notice to the class is appropriate if '[1] the proposed settlement

22  appears to be the product of serious, informed, non-collusive negotiations, [2] has no

23  obvious deficiencies, [3] does not improperly grant preferential treatment to class

24  representatives or segments of the class, and [4] falls within the range of possible

25  approval.'" Johnson v. Quantum Learning Network, Inc., 2016 WL 4529607, at *1 (N.D.

26  Cal. Aug. 30, 2016) (quoting In re Tableware, 484 F. Supp. 2d at 1079). The

27

28

"decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000) (internal quotation marks omitted).

A few years ago, Rule 23(e) was amended, effective December 1, 2018 to delineate factors that district courts must consider when evaluating a class settlement:

> **(2) Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Plaintiffs' counsel have carefully considered each factor and believe the proposed Settlement Agreement conforms with each requirements.

### 1. The Strength of Plaintiffs' Case

Defendant has disputed every aspect of Plaintiffs' case.  Prior to this case being filed, Defendant rolled out a company-wide arbitration agreement that employees were required to sign as part of Defendant's onboarding process. Although Defendant's Motion to Compel Arbitration was denied, this decision is currently on appeal.  If

Defendant prevails on appeal, the bulk of Plaintiffs' claims would be subject to arbitration and could not proceed on a class-wide basis at all. Further, defendant has disputed that meal and rest breaks were not properly provided on a timely basis to Supervisors and Leads. Defendant has also argued that it is not a temporary services employer under Cal. Lab. Code § 201.3(a)(1) and is therefore not required to report on its wage statements the temporary services assignments employees worked. Finally, Defendant has argued that its new hire orientation process is not compensable time as it is took place pre-employment. If Defendant's arguments prevailed, *none* of the Settlement Class might be entitled to *any* damages or penalties. The Settlement will provide participating Settlement Class Members with substantial payments of penalties and wages commensurate with the strength of their claims. It is therefore more than reasonable. This factor thus weighs in favor of approving the Settlement. While Plaintiffs believe their cases are factually and legally supported, the projected individual recoveries are substantial vis a vis the amounts which might be recovered after years of additional litigation.

## 2. The Likely Duration Of Further Litigation

In most cases, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002)). Here, the case has been delayed due to Defendant's appeal of the Court's denial of its motion to compel arbitration. Certification issues remain undecided and will not be addressed until after the appeal is determined. Therefore, the likely duration of further litigation might well be several years. Accordingly, this factor also weighs in favor of approving the settlement.

## 3. The Risk Of Maintaining Class-Action Status Through Trial

Here, no class has been certified and ever after certification might be achieved "there is no guarantee that [a d]efendant w[ill] not move for and obtain decertification of

[a c]lass before or during trial." Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at
*8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust
Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th
Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that, "if
'insurmountable management problems were to develop at any point, class certification
can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ
Market-Makers Antitrust Litig., 187 F.R.D. at 476).  With respect to meal-break claims in
particular, the California Supreme Court has held that "[a]n employer's duty . . .
under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if
the employer "relieves its employees of all duty, relinquishes control over their activities
and permits them a reasonable opportunity to take an uninterrupted 30-minute break."
Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  This means that an
employer is not liable for meal-break violations if the employee voluntarily defers or
foregoes a break.  As explained by the Central District of California, there is often "no
way of determining on a classwide basis whether [missed breaks] were violations . . . or
whether individual class members voluntarily opted to start their meal break late, cut it
short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7
(C.D. Cal. filed Jan. 17, 2013).  Accordingly, there is a risk that fewer than all of
Plaintiffs' class claims will be sustained.  This factor weighs in favor of approval,
particularly in light of the defense argument that a person-by-person determination of the
application of their policies requires hundreds of mini-trials.  See Wal-Mart Stores, Inc.,
131 S.Ct. at 2548.

### 4.  The Settlement Amount Offered

The gross settlement amount is $2,300,000.  The settlement is non-reversionary
and Defendant will pay an additional amount to fund payroll taxes.  Participating
Settlement Class Members can expect to receive substantial payments commensurate
with the value of their claims. (Harris Decl., ¶ 9.)  Settlements awarding just over 10% of
damages are often approved.

1    When considering the fairness and adequacy of the amount offered in

2    settlement, "it is the complete package taken as a whole, rather than the

3    individual component parts, that must be examined for overall fairness."

4    <u>DIRECTV</u>, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that

5    a proposed settlement may be acceptable even though it amounts to only a

6    fraction of the potential recovery that might be available to the class

7    members at trial." *Id.* (collecting cases).

8 <u>Bellinghausen v. Tractor Supply Co.</u>, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving

9 settlement estimated to be as low as 9% of the potential liability). This factor weighs in

10 favor of approving the settlement

11 <h3>5. The Extent Of Discovery And Stage Of The Proceedings</h3>

12    Although the parties have not engaged in formal discovery, Plaintiffs have engaged

13 in significant investigation into the claims in this case, including dozens of witness

14 interviews and review of substantial documents and class data provided by the Defendant

15 before and during the settlement negotiation. (Harris Decl., ¶ 22). The Ninth Circuit has

16 found that, "'in the context of class action settlements, 'formal discovery is not a

17 necessary ticket to the bargaining table' where the parties have sufficient information to

18 make an informed decision about settlement.'" <u>Dunleavy</u>, 213 F.3d at 459.  In

19 negotiating the Settlement Agreement, Class Counsel were provided significant informal

20 discovery sufficient to evaluate the claims.  In addition, Class Counsel undertook their

21 own independent investigation to inform their negotiating position, including risk re-

22 evaluation in light of the potentially dispositive defenses noted above.  All told, they had

23 sufficient information to make an informed decision about settlement.  This factor thus

24 weighs in favor of approval.

25 <h3>6. The Experience And Views Of Counsel</h3>

26    As reflected in the Declaration of Alan Harris filed herewith, Plaintiff's Counsel

27 have substantial experience in prosecuting class actions, including wage-and-hour

28 actions. (Harris Decl. ¶¶ 27-28.)  Counsel are of the opinion that the Settlement

Agreement represents an excellent bargain for the Settlement Class, given the inherent risks, hazards, and expenses of carrying the case through trial. (Harris Decl. ¶¶ 14,17,22.) As the Central District has explained, this weighs strongly in favor of approving the settlement.  See Rodriguez, 2007 WL 2827379 at *9 (explaining that "the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties").

### 7.  The Reaction Of Settlement Class Members

The reaction of Settlement Class Members to the Settlement Agreement cannot, of course, be known until preliminary approval is given, Class Notice is delivered, and responses are received.  This factor is therefore neutral at the preliminary-approval stage.

### C.  Plaintiffs Satisfy The FLSA Collective Action Certification Standard

The factual showing for conditional certification of a FLSA collective action is "modest."  Mitchell v. Acosta Sales, LLC, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011). Courts will approve settlements of both FLSA and Rule 23 claims when the parties expressly allocate settlement payments to the FLSA claims.  Thompson v. Costco Wholesale Corp., 2017 WL 697895 (S.D. Cal. 2017).  Here, the settlement allocates a separate payment to those who opt-into the collective action.  Significantly, "[b]ecause the standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23," courts have found "the FLSA requisites satisfied by a showing that Rule 23 requirements have been met." Khanna v. Inter-Con Sec. Sys., Inc., 2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012).

### IV.  CONCLUSION

The Court should grant conditional certification of the Settlement Class and preliminarily approve the settlement, authorizing the appointment of a claims administrator to distribute the requested Notice.

DATED:  October 18, 2021

HARRIS & RUBLE

Alan Harris

Alan Harris/*Attorneys for Plaintiffs*

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF