Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave., 17th Fl.
Glendale, California 91203
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ISABEL ARTIGA, GABRIEL RODRIGUEZ and JESSICA SHEEHAN, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABM INDUSTRY GROUPS, LLC, a Delaware Limited Liability Company, and DOE ONE through and including DOE TEN,<br><br>          Defendants. | Case No. 2:19-cv-06735-GW-RAO<br>*Assigned to Hon. George H. Wu*<br><br>(Removed from Los Angeles Superior Court, Case No. 19STCV1968)<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES, ENHANCEMENT AWARDS AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  April 4, 2022<br>Time: 8:30 a.m.<br>Ctrm: 9D<br>          350 West First Street<br>          Los Angeles, CA 90012 |
| ABM INDUSTRY GROUPS, LLC, a Delaware Limited Liability Company<br><br>          Counter-Claimant,<br><br>     v.<br><br>I. ARTIGA, an individual, and ROES 1 through t10,<br><br>          Counter-Defendants. | Action Filed: June 4, 2019<br>Trial Date:    None Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that, on April 4, 20202 at 8:30 a.m., in Courtroom 9D of the above-captioned Court located 350 West 1st Street, Los Angeles, California 90012, or on such other date and time as the Court may designate, the Honorable George H. Wu presiding, Plaintiffs Artiga, Sheehan, Rodriguez, Canas, Torres and Mendoza ("Plaintiffs") will and hereby do move pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding attorney's fees of $765,900, reimbursement of litigation costs of $11,998, and enhancement payments of $5,000 for each of the Class Representatives.[1]  The costs sought by Plaintiffs is substantially less than the maximum litigation expenses of $30,000 permitted by the Settlement Agreement.

Whereas, state-law claims predominate in these cases and therefore the requested attorney's fees should be based on California state law rather than federal law;

Whereas, this Court granted preliminary approval of the requested settlement class, (Dec. 14, 2021 Order [ECF Doc. 154]);

Whereas, an outstanding result has been achieved, including changed practices that have had a tangible, positive effect for Defendant's employees, as well as a non-reversionary financial recovery of $2,300,000 and defeat of Defendant's cross-claim against Plaintiff Artiga, a fee award of 33.33% of the common fund is warranted, particularly since the amount is confirmed by Class Counsel's lodestar;

Whereas, the Class Representatives have each provided substantial assistance in the generation of the requested recoveries and should be awarded enhancement awards;

Whereas, this Court has reviewed the history of this case and the terms of the settlement in granting preliminary approval (see generally Order Re: Pls.' Mot. for Preliminary Approval of Class Settlement & Conditional Certification of Settlement

---

[1] The $5,000 "enhancement award" includes a payment of $2,000 to each Plaintiff on account of their services as a PAGA/Class Representative, plus an additional $3,000 as consideration for execution of a general release of claims.  Oct. 18, 2021 Harris Decl., Ex. 1 [ECF Doc. 140-1] at ¶ 18(c).

1  Class [ECF Doc. 154]), and the Court-approved Class Notice was disseminated on
2  January 18, 2022;

3      Whereas, the hourly rates used herein for counsel from Harris & Ruble are the
4  same as those which this Court approved in <u>Chookey v. Sears, Roebuck & Co.</u>, Case No.
5  12-CV-2491 GW(MRWx) (C.D. Cal. July 30, 2014) and <u>Sherman v. CLP Resources,</u>
6  <u>Inc.</u>, No. CV 12- 8080-GW-PLAx, 2020 U.S. Dist. LEXIS 152477 (C.D. Cal. Aug. 6,
7  2020).  See Ex. 2 to the concurrently filed Declaration of Alan Harris.

8      Now, therefore, this Motion, which is made and based upon this Notice; the
9  Memorandum of Points and Authorities appended hereto; the Declarations filed herewith;
10 the Request for Judicial Notice filed herewith; all of the pleadings, papers, and
11 documents contained in the file of the within action; and such further evidence and
12 argument as may be presented at or before the hearing on the Motion, should be granted.[2]

13     The Motion is made pursuant to the December 14, 2021 Order Granting
14 Preliminary Approval of the class-wide Settlement Agreement ("Settlement
15 Agreement"), as well as pursuant to the Court-approved Class Notice disseminated on
16 January 18, 2022. The Class Notice specifies a claims-submission and/or objection
17 deadline of March 21, 2022 and a final-fairness-hearing date of April 4, 2022.[3]

18 //
19 //
20 //
21 //
22 //
23 //

24 [2] Unless otherwise noted, capitalized terms used herein have the meanings set forth in the
25 Settlement Agreement.
   [3] The present Motion is being filed at this time to safeguard the due-process rights of
26 the Settlement Class. See <u>In re Mercury Interactive Corp. Sec. Litig.</u>, 618 F.3d 988, 994–
   95 (9th Cir. 2010) (holding that a district court should set a schedule that provides class
27 members an opportunity to review class counsel's completed fee motion before the
   objection window expires). Contemporaneously with the filing of the, Motion for Final
28 Approval, Plaintiffs will lodge a single, consolidated Proposed Order granting final
   approval and the present fee-and-cost request.

1

2          This Motion is made following the conference of counsel pursuant to Local Rule 7-

3    3 which took place in July  of 2021.

4

5    Dated:  February11, 2022                    HARRIS & RUBLE

6

7

8                                                Alan Harris
                                                 *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT...........3

III.    THE COURT SHOULD AWARD THE REQUESTED
        ATTORNEYS FEES ......................................................................3

        A.      The Requested Attorney's Fees Are Reasonable ................................8

        B.      Class Counsel Is Entitled to Recover Fees From The Common
                Fund...........................................................................11

        C.      Class Counsel's Requested Fees are Reasonable.............................12

                i.      The Results Obtained and the Degree of Risk Assumed.........16

                ii.     The "Market Rate" for Class Counsel's Services....................17

                iii.    Class Counsel's Contingent-Based Representation.................18

                iv.     Class Counsel's Skill and the Complexity of the Issues..........19

                v.      The Reaction of the Class .......................................19

        D.      The Incurred Costs Should Be Reimbursed ....................................20

        E.      The Requested Enhancement Payments Are Reasonable.................21

IV.     CONCLUSION............................................................................22

v

PLS.' NOT. OF MOT. AND MOT. FOR ATTORNEYS FEES; MEM. OF P. & A. IN SUPP.

# TABLE OF AUTHORITIES

Page(s)

In re Activision Sec. Litig.,
723 F. Supp. 1373–78 (N.D. Cal. 1989) ................................................... 12

Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ..................................... 3, 13

Blandino v. MCM Constr., Inc., No. C 12-1729 WHO,
2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ........................................ 19

In re Bluetooth Headset Prods. Liability Litig.,
654 F.3d 935 (9th Cir. 2011) ............................................................ 3, 4, 14

Boeing Co. v. Van Gemert,
444 U.S. 444 (1980) ................................................................................. 12

Bond v. Ferguson, No. 1:09-cv-1662 OWW MJS,
2011 WL 2648879 (E.D. Cal. June 30, 2011) ................................ 12, 15, 16

Campbell v. First Investors Corp., No. 11-CV-0548 BEN
(WMc), 2012 WL 5373423 (S.D. Cal. Oct. 29, 2012) ........................... 22

Carter v. Anderson Merchandisers, LP, No. EDCV 08-0025-VAP (OPx)
2010 WL 1946757 (C.D. Cal. May 11, 2010) .................................... 18-19

Castillo v. ADT, LLC, No. CV 2:15-383 WBS DB,
2017 WL 363108 (E.D. Cal. Jan. 25, 2017) ........................... 15-16, 16, 19

Cicero v. DirecTV, Inc., No. EDCV 07-1182,
2010 WL 2991486 (C.D. Cal. July 27, 2010) ..................................... 17-18

Clark v. Payless Shoesource, Inc., No. C09-0915-JCC,
2012 WL 3064288 (W.D. Wash. July 27, 2012) ....................................... 8

In re Consumer Priv. Cases,
175 Cal. App. 4th 545, 96 Cal. Rptr. 3d 127 (Cal. App. 2009) ................. 6

Craft v. Cnty. of San Bernardino,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................... 17

Davis v. City of San Francisco,
976 F.2d 1536 (9th Cir. 1992) .................................................................. 10

Dearaujo v. Regis Corp., No. 2:14-cv-01408-KJM-DB,
2017 WL 3116626 (E.D. Cal. July 21, 2017) ........................................ 14

Douglas v. Arcadia Health Servs., Inc., No. CV-11-03552 SBA,
2012 WL 12953866 (N.D. Cal. Apr. 17, 2012) ....................................... 19

Edwards v. First Am. Corp., No. CV 07-03796 SJO
(FFMx), 2016 WL 8999934 (C.D. Cal. Oct. 4, 2016) .............................. 7

Franco v. Ruiz Food Prods., Inc., No. 1:10-cv-02354-SK,

2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ................................................. 17, 19, 20

Garcia v. Gordon Trucking, Inc., No. 1:10-CV-0324 AWI SKO,
2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ............................................. 19

Gardner v. GC Servs., LP, No. 10cv0997-IEG
(CAB), 2012 WL 1119534 (S.D. Cal. Apr. 2, 2012) .................................. 18

Greko v. Diesel U.S.A, Inc., No. 10-cv-0
2576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26) ...................................... 8

Guerrero v. Wells Fargo Bank, N.A., No. C 12-04026 WHA,
2014 WL 4351113 (N.D. Cal. Sept. 2, 2014) ............................................. 9

Hayward v. Ventura Volvo,
108 Cal. App. 4th 509, 133 Cal. Rptr. 2d 514 (Cal. App. 2003) ............... 6

In re Heritage Bond Litig., No. 02-ML-1475 DT,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................... 9

Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK,
2013 WL 496358 (N.D. Cal. Feb 6, 2013) .............................................. 17, 18

In re HP Inkjet Printer Litig.,
716 F.3d 1173 (9th Cir. 2013) ........................................................... 6-7, 7

In re HP Laser Printer Litig., No. SACV 07-0667 AG (RNBx)
2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ........................................ 11

In re HPL Techs., Inc. Sec. Litig.,
366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................... 10

Huber v. Majestic Pictures, Inc., No. CV0802243GAFMANX,
2009 WL 10671416 (C.D. Cal. Nov. 24, 2009) ...................................... 19

Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.,
250 F.3d 1234 (9th Cir. 2001) .............................................................. 4

Jefferson v. Chase Home Finance, [No. C 06-6510 TEH,]
2009 WL 2051424 (N.D. Cal. 2009) ................................................... 5-6

Jeter-Polk v. Casual Male Store, LLC, No. EDCV 14-891-VAP (DTBx),
2016 WL 9450452 (C.D. Cal. May 4, 2016) ......................................... 15

In re Linkedin User Privacy Litig.,
309 F.R.D. 573 (N.D. Cal. 2015) ......................................................... 3

Mexican Workers v. Ariz. Citrus Growers,
904 F.2d 1301 (9th Cir. 1990) ............................................................ 6

Morales v. Stevco, Inc., No. CIV-F-09-0704 AWI JLT,
2013 WL 1222058 (E.D. Cal. Mar. 25, 2013) ...................................... 17, 19

In re Nuvelo Sec. Litig., No. C 07-04056 CRB,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................ 13, 17

Odrick v. UnionBanCal Corp.,

    2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) ............................................................ 20

<u>Ontiveros v. Zamora</u>, No. 2:08-567 WBS DAD,
    2014 WL 3057506 (E.D. Cal. July 7, 2014) ............................................................ 13

<u>Parkinson v. Hyundai Motor America</u>,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ....................................................................... 5

<u>In re Petition of Hill</u>,
    775 F.2d 1037 (9th Cir. 1985) ................................................................................. 11

<u>Pierce v. Cnty. of Orange</u>,
    905 F. Supp. 2d 1017 (C.D. Cal. 2012) .................................................................... 11

<u>Produce, Inc. v. Ruby Robinson Co.</u>,
    342 F.3d 1016 (9th Cir. 2003) ................................................................................... 4

<u>Quezada v. Schneider Logistics Transloading & Distrib., Inc.</u>, No. CV 12-2188 CAS
(DTBx),
    2014 WL 12584436 (C.D. Cal. May 12, 2014) ....................................................... 15

<u>Rai v. Santa Clara Valley Transp. Auth.</u>, No. 5:12-cv-04344-PSG,
    2016 WL 9114007 (N.D. Cal. May 17, 2016) ......................................................... 15

<u>Rodriguez v. West Publ'g Corp.</u>,
    563 F.3d 948–59 (9th Cir. 2009) .............................................................................. 21

<u>Rutti v. Lojack Corp.</u>, No. SACV 06-350 DOC (JCx),
    2012 WL 3151077 (C.D. Cal. July 31, 2012) .................................................... 10, 11

<u>In re Schering-Plough Corp. Enhance Sec. Litig.</u>, No. 08-397 (DMC) (JAD),
    2013 WL 5505744 (D.N.J. Oct. 1, 2013) ................................................................ 11

<u>Shames v. Hertz Corp.</u>, No. 07-CV-2174-MMA (WMC),
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ............................................................. 7

<u>Sherman v. CLP Resources, Inc.</u>, No. CV 12-8080-GW-PLAx,
    2020 U.S. Dist. LEXIS 152477 (C.D. Cal. Aug. 6, 2020) ................................. iii, 11

<u>Silva v. Banco Popular N. Am.</u>, No. CV 08-6709 JFW (RZX),
    2009 WL 10672397 (C.D. Cal. June 22, 2009) ....................................................... 19

<u>Singer v. Becton Dickinson & Co.</u>, No. 08-CV0821-IEG (BLM),
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................................................ 12

<u>Smith v. CRST Van Expedited, Inc.</u>, No. 10-CV-1116-IEG (WMC),
    2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ........................................................ 21, 22

<u>Staton v. Boeing Co.</u>,
    327 F.3d 938 (9th Cir. 2003) ..................................................................................... 8

<u>Stetson v. Grissom</u>,
    821 F.3d 1157 (9th Cir. 2016) ................................................................................... 3

<u>Tait v. Home Appliances Corp.</u>, No. SACV 10-0711-DOC (ANx),

2015 WL 4537463 (C.D. Cal. July 27, 2015) .............................................................. 7

Thieriot v. Celtic Ins. Co., No. C 10-04462 LB,
2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........................................................ 18

In re Toyota Motor Corp. Unintended Acceleration Mtkg., Sales Practices, & Prods.
Liability Litig., No. 8:10ML 02151 JVS (FMOx),
2013 WL 12327929 (C.D. Cal. July 24, 2013) ...................................................... 14

Van Vranken v. Atl. Richfield Co.,
901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................ 14

Vasquez v. Coast Valley Roofing, Inc.,
266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................... 22

Vizcaino v. Microsoft Corp.,
290 F.3d 1043 (9th Cir. 2002) ....................................................................... 8, 9, 19

Williams v. Brinderson Constructors, Inc., No. CV-15-02474 MWF (AGRx),
2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ....................................................... 13-14

Williams v. Centerplate, Inc., No. 11-CV-2159 H-KSC,
2013 WL 4525428 (S.D. Cal. Aug. 26, 2013) ....................................................... 18

ix

PLS.' NOT. OF MOT. AND MOT. FOR ATTORNEYS FEES; MEM. OF P. & A. IN SUPP.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs' should be awarded their requested attorneys' fee, litigation costs and enhancement awards in this case.  The requested fee award is supported by counsel's lodestar.  This litigation and the culminating settlement has spurred many changes to Defendant's practices and resulted in a substantial non-reversionary cash recovery, resolving the claims in the case pending before this Court, as well as a later-filed PAGA action, Canas, which was filed in state court.

On December 14, 2021, this Court preliminary approved the Settlement Agreement between Plaintiffs Artiga, Sheehan, Rodriguez, Canas, Torres and Mendoza (collectively "Plaintiffs") and Defendants ABM Industry Groups, LLC.  (See generally Order Re: Pls.' Mot. for Preliminary Approval of Class Settlement & Conditional Certification of Settlement Class.)

The gross, direct monetary value of the compromise is a non-reversionary $2,300,000, with Defendant ABM agreeing to make an additional payment, outside of and in addition to the gross settlement fund, for payroll taxes, ABM already having paid out some $80,000 on account of refunds of uniform deposits to current employees. The approximate gross recovery for each of the class members, assuming one hundred percent participation is a little over fifty-six dollars ($2,300,000 [settlement value]/40,595 [number of workers]). The Settlement also provides that no less than ten percent of the Net Settlement Amount shall be allocated for payment of PAGA penalties.  Assuming all requested payments are approved by the Court, the estimated Net Settlement Amount is $1,400,612.[4]  Therefore a minimum of $140,061 shall be allocated for PAGA, 75% of which shall be paid to the Labor & Workforce Development Agency ("LWDA") and

---

[4] The estimated claims administration cost is $91,500 and the Settlement provides that Plaintiffs may apply to the Court for an award of attorneys' fees of up to 33.3% of the Settlement Amount ($765,900) and costs not to exceed $30,000.  Here, Plaintiffs seek $11,988 in costs.  Plaintiffs also apply to the Court for enhancement awards totaling $30,000 for the six class representatives.

1  25% of which shall be allocated to participating class members. The settlement provides

2  effective de facto relief to current and future employees and puts to rest Defendant's

3  crossclaim against Plaintiff Artiga.

4      On January 18, 2021, Class Notice was mailed, and settlement payments will be

5  made to those Class Members who have submitted Claim Forms.

6      From the $2,300,00.00 gross settlement value, Class Counsel seek an attorney's fee

7  award of $765,900 for some 1198.7 hours of work—an effective mixed hourly rate of

8  $638.94 per hour.  The requested award is less than the actual lodestar, $831,365.50.

9  Class Counsel also seek reimbursement of $11,988 in incurred litigation expenses.

10      Work on this case commenced in 2018, and ultimately inducing Defendant to make

11  significant changes to its policies.  For example, in addition to the settlement payments

12  that the Defendant are making, ABM has undertaken other changes to achieve better

13  compliance with California's wage and hour laws. As a result of this lawsuit, as of May,

14  2021, ABM ended its uniform deposit program for hourly employees in California and its

15  counsel have advised the undersigned that this effort has included the return of some

16  $80,000 in uniform deposits, including interest, which ABM held with respect to current

17  hourly employees in California. Oct. 18, 2021 Declaration of Alan Harris [ECF Doc.

18  140], ¶ 9.  In addition, ABM continues to roll out wage and hour training and reminders

19  to ABM's staff and management employees in California. Annual online wage and hour

20  training has been and will be provided to ABM's staff and management employees. ABM

21  also developed an annual California-specific meal and rest break training that was rolled

22  out to ABM's staff and management employees in California in December of 2020.

23  These trainings include stressing the importance of taking uninterrupted meal and rest

24  breaks, and of payment for all hours worked.  ABM also continues to improve its payroll

25  processes so that paystubs are complete and accurate.

26      The monetary and non-monetary relief represents an outstanding result.  When the

27  lodestar is analyzed, the requested fee should be approved.  The cash payments and other

28  benefits for Class Members warrant a significant fee award, especially since such a fee

will be an effective, mixed hourly rate for attorneys and paraprofessionals of $638.94 per hour. Any award will not be paid until after June, 2022, at the earliest, after the expenditure of over $11,988 in out-of-pocket costs and some four years of litigation, all of which effort was undertaken without guarantee of any fee or even reimbursement of costs.  Class Counsel respectfully submits that the requested fee award, although greater than the Ninth Circuit's 25% "benchmark" is the typical fee award under California law of "one-third of the common fund,"  Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017), is appropriate.

## II.   PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT

A summary of litigation and procedural history is set forth in the concurrently filed Harris Declaration.

## III.   THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS FEES

A court overseeing a class-wide settlement in federal actions, "has discretion to apply either a lodestar method or the percentage-of-the-fund method in calculating a fee award." Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. 2016) (antitrust action, internal quotation marks omitted).  Regardless of which method is selected, or whether state or federal law applies, courts in the Ninth Circuit should "cross-check[] their calculations against [the non-selected] method" to assure themselves that the calculated fee is reasonable.  In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 944 (9th Cir. 2011).  Accordingly, "even though the lodestar method may be a perfectly appropriate method of fee calculation. . . courts [are] to guard against an unreasonable result by cross-checking their calculations against a second method." Id.

Generally speaking the lodestar method "is routinely used when 'the relief sought, and obtained, is often primarily injunctive in nature and thus not easily monetized.'" In re Linkedin User Privacy Litig., 309 F.R.D. 573, 590 (N.D. Cal. 2015) (quoting In re Bluetooth Headset Prods. Liability Litig., 654 F.3d at 942).  Here, of course, the Settlement provides for monetary relief, but the litigation has also spurred other changes in day-to-day employment practices, ultimately having substantial value to the workers,

suggesting that a court might apply the lodestar method, particularly as this is, fundamentally, a fee-shifting case under and state law, a matter in which counsel for a prevailing employee is entitled to compensation for all hours reasonably spent. The question thus becomes, under what circumstances should a court use the lodestar method when the class has, as here, enjoyed a multi-million dollar recovery, as well as relief which is not easily quantified? It is respectfully submitted that here—in a state-law fee-shifting case—each method should be observed, focusing on the lodestar, which supports the fee requested. With respect to the common fund method, since the bulk of potential damages, penalties and civil penalties derive from state law, with the FLSA implicated only with respect to limited claims for liquidated damages, the relevant benchmark is one third.[5] Here, the requested fee award is one third of the Gross Settlement Value.

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." In re Bluetooth Headset Prods. Liability Litig., 654 F.3d at 942. Often, when the size of the common fund is large, giving a straight percentage award might result in an inflated fee. See id. at 942–43 ("Thus, for example, when awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should . . . employ the lodestar method instead.") The rationale is that using a percentage-of-the-fund approach in such a situation ends up increasing the fees based "merely . . . [on] the size of the class"—a factor that may have "no direct relationship to the efforts of counsel," i.e., counsel ends up getting rewarded simply because the size of the class happens to be large. Id. at 943 (internal quotation marks omitted). But the converse also is true: When

---

[5] "An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1024 (9th Cir. 2003). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001) (internal quotation marks omitted); see also Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 827 (9th Cir. 2009) ("State law establishes the required showing for attorney's fees in an action in diversity.").

1    the size of the class is relatively small, class counsel should not be penalized by a reduced

2    fee.  In other words, just as class counsel's fees should not be calculated using the

3    percentage-of-the-fund method when doing so would lead to an inflated fee award, their

4    fees shouldn't be calculated using the percentage-of-the-fund method when doing so

5    would lead to an arbitrarily low fee.  This is exactly what the district court held in

6    Parkinson v. Hyundai Motor America, 796 F. Supp. 2d 1160 (C.D. Cal. 2010).

7         In Parkinson, the court had already approved a class-wide settlement valued at up

8    to $3.42 million, for the benefit of approximately 2,900 class members; at issue was class

9    counsel's fee request for $7.9 million, to be paid on top of the $3.42 million.  Parkinson,

10   796 F. Supp. 2d at 1164, 1171.  (Of course, because the fees were being paid on top of

11   the $3.42 million, the Parkinson settlement technically was not a traditional common

12   fund.  See id. at 1170.  However, that distinction does not matter, since the court itself

13   explained that it could "reasonably approximate total recovery [for the class] by

14   multiplying the average claim amount by the estimated class size" and that it had the

15   discretion "to use a constructive common fund or POR [i.e., percentage-of-recovery]

16   method."  Id.)  In ultimately approving attorney's fees of $3.7 million, id. at 1177, the

17   Parkinson court "declined to use a . . . common fund or POR method," since such a

18   method would lead to an inequitable result, id. at 1171–72.  As explained in Parkinson:

19        In light of the disparity between potential total recovery and plaintiffs' fee

20        request of approximately $4.13 million (without a multiplier), it would be

21        within the Court's discretion to find the fee request unfair and unreasonable

22        [under the POR method].  . . .

23        However, in light of several factors, the [c]ourt declines to use a

24        constructive common fund or POR method in this case.  First, given the

25        nature of repairs and relatively small size of potential class, it is not unusual

26        that overall recovery would seem "low."  This in and of itself does not

27        necessarily mean the attorneys' fees award should be arbitrarily

28        reduced.  See Jefferson v. Chase Home Finance, [No. C 06-6510 TEH,]

2009 WL 2051424, *3 (N.D. Cal. 2009) (state court decisions are clear that consumer protection may require a disproportionate award).  Moreover, while the [c]ourt has discretion to perform a "cross-check" against the total class recovery, it is not required.  *In re Consumer Priv. Cases,* 175 Cal. App. 4th 545, 557, 96 Cal. Rptr. 3d 127 (Cal. App. 2009).

Second, "[o]ne-way fee shifting statutes encourage litigation in cases that are not likely candidates to produce high-dollar judgments, either because relief sought is non-monetary or because only modest amounts of money are at stake."  James R. Maxeiner, *Cost and Fee Allocation in Civil Procedure,* American 58 Am. J. Comp. L. 195, 201 (2010).  California's fee-shifting and private attorney general statutes incentivize counsel to take cases on behalf of plaintiffs who could not otherwise afford to vindicate their rights through litigation.

. . . Use of the POR method in this case would result in an arbitrary reduction in the fee award, contrary to the purpose of the fee-shifting statute.  *See Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509, 512, 133 Cal. Rptr. 2d 514 (Cal. App. 2003) ("The provision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest.  To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying section 1780.").

Parkinson, 796 F. Supp. 2d at 1171–72; see also Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (stating that the percentage-of-the-fund method "should be adjusted, or *replaced by a lodestar calculation*, when special circumstances indicate that the percentage recovery would be either *too small* or too large in light of the hours devoted to the case") (emphasis supplied); In re HP Inkjet Printer Litig., 716 F.3d 1173, 1190 (9th Cir. 2013) (explaining that "our cases do not suggest that the fee award must be equally justifiable under both the lodestar and the percentage

1   methods, or that the percentage method, when used as a cross-check, must be precise,"

2   since "[a]n equal justification requirement would defeat the purpose of affording district

3   courts the choice to employ one method when the other is impracticable" or leads to an

4   unreasonable result).

5          Indeed, just as in <u>Parkinson</u>, the within case is "not [a] likely candidate[] to

6   produce [a] high-dollar judgment," given the relatively small unpaid-wage amounts at

7   issue for any given Class Member, as well as the inherent defenses in meal and rest break

8   cases.  <u>Id.</u>  But this is precisely why the Class' claims are subject to fee-shifting statutes

9   designed to "encourage litigation," and Class Counsel should be rewarded—not be

10  arbitrarily punished with a reduced fee award—for having taken on a case and "lifted a

11  burden felt by many [C]lass [M]embers . . . that would have otherwise gone

12  unresolved."  <u>Id.</u>; <u>see also</u> <u>Tait v. Home Appliances Corp.</u>, No. SACV 10-0711-DOC

13  (ANx), 2015 WL 4537463, at *9 (C.D. Cal. July 27, 2015) ("find[ing] it appropriate to

14  calculate reasonable attorney's fees . . . using the lodestar method" instead of the

15  percentage-of-the-fund method because the plaintiffs' "claims [we]re based on fee-

16  shifting statutes") (citing <u>In re Bluetooth Headseat Prods. Liability Litig.</u>, 654 F.3d at

17  941); <u>Shames v. Hertz Corp.</u>, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *17

18  (S.D. Cal. Nov. 5, 2012) (stating that the "'lodestar method' is appropriate in class

19  actions brought under fee-shifting statutes") (internal quotation marks omitted); <u>Edwards</u>

20  <u>v. First Am. Corp.</u>, No. CV 07-03796 SJO (FFMx), 2016 WL 8999934, at *3 (C.D. Cal.

21  Oct. 4, 2016) (choosing the lodestar method over the percentage-of-the-fund method

22  since, among other reasons, the plaintiff's claims had been brought under "a fee-shifting

23  statute that provides for prevailing parties to recover their attorneys' fees from the

24  opposing side").  Although the average recovery per Class Member here "sounds like a

25  relatively small amount of money and may not add up to a large aggregate recovery, . . .

26  representation by [C]lass [C]ounsel is likely their only feasible means of recovery,"

27  justifying use of the lodestar method.  <u>Parkinson</u>, 796 F. Supp. 2d at 1171.

28

1

**A. The Requested Attorney's Fees Are Reasonable**

2    Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the

3    court may award reasonable attorney's fees and nontaxable costs that are authorized by

4    law or by the parties' agreement." Fed. R. Civ. Proc. 23(h).  Rule 23(h) applies to

5    requests for attorney's fees for settled class actions.  See Staton v. Boeing Co., 327 F.3d

6    938, 964 (9th Cir. 2003) (explaining that "[a]ttorneys' fees provisions included in

7    proposed class action agreements are, like every other aspect of such agreements, subject

8    to the determination whether the settlement is 'fundamentally fair, adequate and

9    reasonable'").  In analyzing Rule 23(h) fee requests, courts "'have an independent

10   obligation to ensure that the award, like the settlement itself, is reasonable[] even if the

11   parties have already agreed to an amount.'"  Greko v. Diesel U.S.A, Inc., No. 10-cv-

12   02576 NC, 2013 WL 1789602, at *8 (N.D. Cal. Apr. 26, 2013) (quoting In re Bluetooth

13   Headset Prods. Litig., 654 F.3d at 941).  For purposes of determining a reasonable fee,

14   "'courts have discretion to employ either the lodestar method or the percentage-of-

15   recovery method.'"  Greko, 2013 WL 1789602, at *8.  Again, though, "[t]he lodestar

16   method is. . . preferable when calculating statutory attorney fees, whereas the percentage-

17   of-recovery approach is appropriate when the fees will be drawn from a common fund."

18   Clark v. Payless Shoesource, Inc., No. C09-0915-JCC, 2012 WL 3064288, at *1 (W.D.

19   Wash. July 27, 2012) (citing In re Bluetooth Headset Prods. Litig., 654 F.3d at 941).  The

20   percentage method is also particularly suited for common-fund settlements achieved at a

21   procedurally early litigation stage—a factor not present here.  See Vizcaino v. Microsoft

22   Corp., 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) (stating that "the primary basis of the

23   fee award remains the percentage method" and that, although the lodestar can be used as

24   a "crosscheck of the percentage method," it should not "imply that class counsel should

25   necessarily receive a lesser fee for settling a case quickly").  In hard-fought cases, as

26   here, "the lodestar calculation can be helpful in suggesting a higher percentage when

27   litigation has been protracted."  Vizcaino, 290 F.3d at 1050.  Here, the time from which

28   initial meetings with the clients took place to the estimated time for payment of fees and

1    reimbursement of costs will be nearly four years—a protracted period that is a key factor

2    warranting granting the requested fee award.

3            As recognized in <u>Guerrero v. Wells Fargo Bank, N.A.</u>, No. C 12-04026 WHA,

4    2014 WL 4351113 (N.D. Cal. Sept. 2, 2014), "the district court has discretion in

5    common fund cases to choose either the percentage-of-the-fund or the lodestar method."

6    <u>Id.</u> at *3, quoting <u>Vizcaino</u>, 290 F.3d at 1047.  In this case, Plaintiffs suggest that the

7    lodestar method is appropriate, considering that the settlement in this case was only

8    achieved at a later stage in the litigation, *i.e.*, after a determination was already made

9    regarding class certification.  In any event, when setting a fee award, courts can—and

10   should—apply the lodestar method to provide "perspective on the reasonableness of a

11   given percentage award."  <u>Vizcaino</u>, 290 F.3d at 1050.  According to the Ninth Circuit,

12   "[c]alculation of the lodestar, which measures the lawyers' investment of time in the

13   litigation, provides a check on the reasonableness of the percentage award."  <u>Id.</u>

14           "Lodestar calculations are determined by multiplying the number of hours

15   reasonably expended during the litigation by a reasonable hourly rate."  <u>In re Heritage</u>

16   <u>Bond Litig.</u>, No. 02-ML-1475 DT, 2005 WL 1594403, at *5 (C.D. Cal. June 10, 2005).

17   It is "common for a counsel's lodestar figure to [then] be adjusted upward by some

18   multiplier reflecting a variety of factors such as the effort expended by counsel, the

19   complexity of the case, and the risks assumed by counsel."  <u>Id.</u> at *22 (citing <u>In re</u>

20   <u>Linerboard Antitrust Litig.</u>, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2,

21   2004) (recognizing that the average multiplier approved in common-fund cases is 3.89),

22   <u>disapproved on other grounds</u>, <u>In re ATM Fee Antitrust Litig.</u>, 686 F.3d 741, 755 n.7

23   (9th Cir. 2011)).

24           Here, based on the detailed, contemporaneously kept time records submitted with

25   this Motion, the unadjusted lodestar (*i.e.*, with no multiplier) is $831,365.50 computed as

26   a function of the hours and rates detailed in the concurrently filed Declarations.

27

28

| Table 1:  Class Counsel's Requested Hourly Rates | | | | |
|---|---|---|---|---|
| *Attorney* | *JD Acquired* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | 1974 | $895 | 398.1 | $356,299.50 |
| P. Mohan | 2003 | $625 | 712.3 | $445,187.50 |
| H&R -- Other Senior Attorneys[6] | 1992-2003 | $625 | 21.7 | $13,937.50 |
| H&R -- Junior Associates[7] | 2013 | $325 | 17 | $5,525 |
| H&R Law Clerks/Paralegals | --- | $210 | 49.6 | $10,416 |
| *Total* | --- | --- | 1198.7 | **$831,365.50** |

The H&R rates noted above and the associated hours are reasonable.  As to the rates, "'[t]he proper reference point in determining an appropriate fee award is the rate[] charged by private attorneys in the same legal market as prevailing counsel.'" Rutti v. Lojack Corp., No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *10 (C.D. Cal. July 31, 2012) (quoting Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996)).  The rate charged by private attorneys in the same legal market, in turn, is the "'prevailing market rate[] in the relevant community,'" Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992) vacated in part on other grounds by 984 F.2d 345 (9th Cir. 1993) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)), and the relevant community is "'the forum district'—[here], the Central District of California," Anderson v. Nextel Retail Stores, LLC, No. 07-4480-SVW (FFMx), 2010 WL 11506729 at *2 (C.D. Cal. June 30, 2010) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)). When setting rates, courts should use the attorneys' "current" rates, *i.e.*, their rates at the time of the fee application.  See In re HPL Techs., Inc. Sec. Litig., 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel has not been paid contemporaneously").

---

[6] The Senior Attorneys were David Garrett and David Zelenski.

[7] The Junior Associates were Min Ji Gal and Lin Zhan.

According to case authority, the above rates are within the range of rates approved by the Central District for complex class actions, including wage-and-hour actions. See, e.g., Orian v. Fed'n Int'l des Droits de L'Homme, No. CV 11-6904 PSG (FFMx), 2012 WL 994643, at *3 (C.D. Cal. Mar. 22, 2012) (approving $900 per hour rate for anti-SLAPP motion practice); Rutti, 2012 WL 3151077, at *11 (in a wage-and-hour action, approving rates of up to $750 per hour); Pierce v. Cnty. of Orange, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving rates of up to $850 per hour); In re HP Laser Printer Litig., No. SACV07-0667 AG (RNBx), 2011 WL 3861703, at *5–6 (C.D. Cal. Aug. 31, 2011) (approving rates of up to $800 per hour); In re Schering-Plough Corp. Enhance Sec. Litig., No. 08-397 (DMC) (JAD), 2013 WL 5505744, at *58 n.43 (D.N.J. Oct. 1, 2013) ($875 per hourly rate for a "very experienced class action lawyer" characterized as "extremely reasonable, if not a bargain"). These cited cases found at least nine years ago that the rates counsel is now seeking this Court to approve were reasonable. Indeed, the hourly rates used herein for counsel from Harris & Ruble are the same as those which this Court approved in Chookey v. Sears, Roebuck & Co., Case No. 12-CV-2491 GW(MRWx) (C.D. Cal. July 30, 2014) and Sherman v. CLP Resources, Inc., No. CV 12- 8080-GW-PLAx, 2020 U.S. Dist. LEXIS 152477 (C.D. Cal. Aug. 6, 2020). Harris Decl., Ex. 2. Rather than employing a multiplier, Class Counsel's present fee request of one third of the common fund is supported by counsel's lodestar and is thus reasonable. As outlined in further detail in the Harris Declaration, the requested lodestar here is based on rates that are in line with those described by the "Laffey Matrix." (Harris Decl. ¶¶ 18-21.)

### B.     Class Counsel Is Entitled to Recover Fees From The Common Fund

As explained by the Ninth Circuit, a "common fund" exists "when (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir. 1985). According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and

mathematically ascertainable claim to part of a lump-sum [amount]." <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 444, 479 (1980).  Here, the $2,300,00 non-reversionary Gross Settlement Value is a common fund, as each participating Class Member will be entitled to a significant cash recovery.

Accordingly, the Court may consider the percentage-of-recovery approach when setting the amount of Class Counsel's fee.  As explained below, because Class Counsel's requested fees are well within the range specified by California state law as well as the Ninth Circuit, and, because participating Class Members here will recover a substantial percent of their actual damages, the Motion should be granted.

### C.    Class Counsel's Requested Fees are Reasonable

The requested fees are reasonable, both in light of the lodestar and any percentage of recovery analysis.  While 25% has been called a "benchmark," in federal cases in this Circuit, "the exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award *exceeds* that benchmark.'" <u>Bond v. Ferguson</u>, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) (quoting <u>Knight v. Red Door Salons, Inc.</u>, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)) (emphasis supplied).  <u>See also</u> <u>In re Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) (stating that "nearly all common fund awards range around 30%").  This is particularly true when class members stand to recover a significant amount of their potential damages and when class counsel's lodestar exceeds the fee request.  <u>See</u> <u>Singer v. Becton Dickinson & Co.</u>, No. 08-CV0821-IEG (BLM), 2010 WL 2196104, at *8–9 (S.D. Cal. June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund").

Here, Class Counsel request a total fee of $765,900, or 33.33% of the Gross Settlement Value.  The requested fee is supported by the lodestar.  This request is in line with the 33% "benchmark" in state law cases, and the fee request is warranted in this case, particularly in light of the significant monetary and non-monetary relief participating Class Members will receive under the Settlement.  Moreover, as explained

above, Class Counsel's lodestar, for nearly four years of uncompensated work, supports the fee request. Class Counsel's fee request only includes time spent through February 4, 2022 and they have and will continue to perform additional work. Class Counsel is reasonably expected to spend at least an additional forty hours to resolve this matter, including further preparation regarding the fee petition, preparation of the motion for final approval, and responding to communications from class members. (Harris Decl., ¶ 10.) These factors support an award of the requested fee. Compare In re Nuvelo Sec. Litig., No. C 07-04056 CRB, 2011 WL 2650592, at *1 (N.D. Cal. July 6, 2011) (explaining that two factors considered in setting an appropriate percentage include "whether counsel achieved exceptional results" and whether the requested percentage compares favorably "with counsel's lodestar") (citing Vizcaino, 290 F.3d at 1048–50). When determining what particular percentage is fair, reasonable, and adequate, courts also consider "the degree of risk assumed by counsel," whether "counsel's performance generated benefits beyond the cash settlement fund," whether "the fee lies above or below the market rate," the "length of time counsel represented the class on a contingency basis," class counsel's "experience and skill," and the "reaction of the class." In re Nuvelo Sec. Litig., 2011 WL 2650592, at *1. Here, the factors all weigh in favor of awarding the requested fee.

In any event, even in those cases applying the percentage-of-the-fund method, "[d]istrict courts in this circuit have routinely awarded fees of one-third of the common fund or higher," Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (collecting cases supporting the proposition that, in "most common fund cases, the award exceeds [the 25%] benchmark") (brackets in original), especially when—as here—"they are corroborated by the lodestar," Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *15 (E.D. Cal. July 7, 2014). Williams v. Brinderson Constructors, Inc., No. CV-15-02474 MWF (AGRx), 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) (approving 33% recovery) ("The Motion cites case law indicating that in cases with smaller settlement funds,

awards in excess of 25% are often approved.  See Craft v. Cty. of San Bernardino, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ('Often, but not always, fees of less than 25% will be awarded in megafund cases (cases of $50 Million or more).'"); Carter v. McDonald's Rests., No. EDCV-15-01531-MWF-(JCx), 2017 WL 5634300, at *5–6 (C.D. Cal. Mar. 15, 2017) (stating that "the Court agrees that the 31.5% award requested here is reasonable").

Courts have recognized that they "must consider the size of the [common] fund as 'one relevant factor' in determining whether to adjust the percentage" allocated to attorney's fees.  In re Toyota Motor Corp. Unintended Acceleration Mtkg., Sales Practices, & Prods. Liability Litig., No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929, at *34 (C.D. Cal. July 24, 2013) (quoting Vizcaino v, 290 F.3d at 1047).  While this consideration frequently arises in the context of so-called "megafund cases with class recoveries of $75–$200 million," Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995)—the concern being that, in such cases, "awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case," In re Bluetooth Headset Prods. Liability Litig., 654 F.3d at 942—it also arises for "relatively smaller [settlements] of less than $10 million," Van Vranken, 901 F. Supp. at 297.  The rationale is that, just as how awarding a straight 25% to class counsel for a megafund case can lead to a windfall, with the size of the award outstripping the lodestar, allotting only 25% to class counsel for a settlement of under $10 million can lead to an analogously unfair result, with the size of the award falling short of compensating class counsel for the actual work they have put into a case.  Again, class counsel's lodestar is "presumptively reasonable," and it should be used to gauge the ultimate size of an award of attorney's fees instead of an inflexible percentage, at least as a cross-check.  In re Bluetooth Headset Prods. Liability Litig., 654 F.3d at 941. Presumably, this is why, "in most common fund cases"—i.e., in cases that settle for less than $10 million—"the award exceeds th[e] benchmark." Dearaujo v. Regis Corp., No. 2:14-cv-01408-KJM-DB, 2017 WL 3116626, at *12 (E.D. Cal. July 21, 2017).  See also,

e.g., Van Vranken, 901 F. Supp. at 297–98 (explaining that "high percentages such as 30–50 percent of the fund were awarded" in cases with "relatively smaller funds of less than $10 million," with "fees most often fall[ing to] the 13–20 percent range" for "cases where common funds are in the range of $51–75 million," and with fees falling further still to "the 6–10 percent range" for "megafund cases with class recoveries of $75–$200 million") (citing cases); Rai v. Santa Clara Valley Transp. Auth., No. 5:12-cv-04344-PSG, 2016 WL 9114007, at *3 (N.D. Cal. May 17, 2016) (awarding 30% in fees, which was 94% of the lodestar, and stating that, "in most common fund cases, the award exceeds th[e] benchmark") (internal quotation marks omitted) (citing cases); Jeter-Polk v. Casual Male Store, LLC, No. EDCV 14-891-VAP (DTBx), 2016 WL 9450452, at *7 (C.D. Cal. May 4, 2016) (awarding 33.33% in fees, since the lodestar exceeded that amount, and stating that, "in most common fund cases, the award exceeds th[e] benchmark") (internal quotation marks omitted); Quezada v. Schneider Logistics Transloading & Distrib., Inc., No. CV 12-2188 CAS (DTBx), 2014 WL 12584436, at *7, 10 (C.D. Cal. May 12, 2014) (awarding 33.33% in fees, which exceeded the lodestar, and stating that, in "most common fund cases, the award exceeds the benchmark") (internal quotation marks omitted).

Here, the cases suggest that a lodestar award or a departure from a benchmark is warranted. Again, Class Counsel requests that the Court award a fee in line with the 33% "benchmark" in state law cases.  In light of the multi-year effort involved in prosecuting this case, and the Settlement which resolves the claims in this case, as well as a later-filed state court matter, with Counsel funding all costs with no assurance of recovering any costs, much less a fee for over 1198.7 hours of work, attorney compensation representing 33.33% of the Gross Settlement Amount is reasonable.  See Bond v. Ferguson Enters., Inc., No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ('[T]he exact percentage [of attorneys' fees] varies depending on the facts of the case, and in most common fund cases, the award exceeds [the 25%] benchmark.'); Castillo v. ADT, LLC, No. CV 2:15-383 WBS DB, 2017 WL 363108, at

*7 (E.D. Cal. Jan. 25, 2017).  The present rule is that fee awards amounting to "33 1/3% of the total settlement value" are considered "acceptable":

> The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; Staton, 327 F.3d at 952.  However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D.Cal.2009*); see also In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377–78 (N.D. Cal.1989) ("nearly all common fund awards range around 30%").

Bond, 2011 WL 2648879, at *9.  An award more than 25% of the recovery would be particularly appropriate in wage-and-hour class actions in which the defendant would have been responsible for payment of 100% of the lodestar in the event of a judgment.  Were plaintiffs routinely limited to a fee below their lodestar, there would be a disincentive to settle cases short of trial, or to even undertake cases such as here.  Accordingly, here, as in other settlements, "[t]he fact that the requested fees in this case are supported by the lodestar figure further supports granting approval" of a fee of up to one-third.  Castillo, 2017 WL 363108 at *7.  Class Counsel's fee-and-cost request should therefore be approved as fair, reasonable, and adequate.

### i.    The Results Obtained and the Degree of Risk Assumed

The $2,300,000.00 settlement is an exceptional result obtained in the face of significant risk.  Again, on average, participating Class Members will recover a significant portion of their actual lost wages.  These recoveries are substantial in and of themselves, and particularly large given the dispositive defenses available to Defendant in this action.  Had the defense prevailed, then *none* of the individuals within the Settlement Class would be entitled to *any* payments at all.

Adding to these risks is the fact that Class Counsel undertook this litigation on a

contingent-fee basis, requiring them to shoulder not only the cost of attorney time, but all of the costs of what will be nearly four years of litigation.  See Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK, 2013 WL 496358, at *3 (N.D. Cal. Feb 6, 2013) (in awarding more than the 25% benchmark, explaining that "[c]lass [c]ounsel took a significant risk investing in this case" because it "was conducted on an entirely contingent fee basis against a well-represented [d]efendant," and because [a]ll of the financial risk of litigation was therefore assumed by [c]lass [c]ounsel, whose fee arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation"); Franco v. Ruiz Food Prods., Inc., No. 1:10-cv-02354-SK, 2012 WL 5941801, at *16 (E.D. Cal. Nov. 27, 2012) (stating that "an award of one-third of the common fund as attorneys' fees has been found appropriate" when an "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel invest[] time, effort, and money with no guarantee of recovery").  Judged relative to these risks, these factors weigh in favor of granting the present Motion in full.

### ii.    The "Market Rate" for Class Counsel's Services

Class Counsel's fee request is significantly less than the "market rate" for a settlement of this size.  The market-rate factor concerns "'the range of fee awards out of common funds of comparable size.'"  Morales v. Stevco, Inc., No. CIV-F-09-0704 AWI JLT, 2013 WL 1222058, at *3 (E.D. Cal. Mar. 25, 2013) (quoting Vizcaino, 290 F.3d at 1050).  See also In re Nuvelo Sec. Litig., 2011 WL 2650592, at *2 (in analyzing the percentage rate requested relative to the market rate, finding that "30% reasonably compares to other awards for [settlements of the same size]").  According to the Central District, "25% is substantially below the average class fund fee nationally," and "[c]ases of under $10 [m]illion will often result in fees above 25%."  Craft v. Cnty. of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (citing a study by the Federal Judicial Center "of all class actions resolved or settled over a four-year period," which study "found a median percentage recovery range of 27–30%").  See also Cicero v. DirecTV, Inc., No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010)

(explaining that "20 to 30% [i]s the usual range in common fund cases where the recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–50% [is] commonly . . . awarded in case[s] in which the common fund is relatively small," and that "*cases below $10 million are often [compensated at] more than the 25% benchmark*") (emphasis supplied).  In light of the "market rate" for a settlement of this size, Class Counsel's fee request is reasonable.

It is proper to calculate a percentage award based on the Gross Settlement Value as opposed to that portion of the Net Settlement Sum that is claimed by Class Members. See, e.g., Williams v. Centerplate, Inc., No. 11-CV-2159 H-KSC, 2013 WL 4525428, at *6 n.2 (S.D. Cal. Aug. 26, 2013) (in awarding fees of 30%, explaining that, "in determining the reasonableness of the requested attorneys' fees, the district court should calculate fees as a percentage of the entire common fund . . . rather than the total funds claimed") (citing Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997)).

### iii.    Class Counsel's Contingent-Based Representation

Class Counsel's fee request is further justified based on the contingent nature of what will be their nearly four-year-long representation when fees may finally be paid, in mid-2022, at the earliest.  As explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward adjustment from the benchmark.  Hopkins, 2013 WL 496358 at *3.  See also Gardner v. GC Servs., LP, No. 10cv0997-IEG (CAB), 2012 WL 1119534, at *7 (S.D. Cal. Apr. 2, 2012) (in concluding that a 30% fee award was reasonable, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it"); Thieriot v. Celtic Ins. Co., No. C 10-04462 LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011) (in awarding a 33% fee, explaining that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all"); Carter v. Anderson Merchandisers, LP, No. EDCV 08-0025-VAP (OPx), 2010 WL 1946757, at *2 (C.D. Cal. May 11, 2010) (in awarding the requested

fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden").[8]  This factor therefore weighs in favor of approving the requested fees.

### iv.   Class Counsel's Skill and the Complexity of the Issues

As explained by the Eastern District, "California wage and hour law is extremely complex[,] and the statutory/administrative language can be particularly difficult to parse." Morales, 2013 WL 1222058, at *3.  See also Franco, 2012 WL 5941801, at *16 (explaining that "specialist skills" are required "to litigate the legal theories relating to wage and hour law and labor law"); Garcia v. Gordon Trucking, Inc., No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *10 (E.D. Cal. Oct. 31, 2012) (in awarding 33% of a common-fund settlement, concluding that "th[e] case required substantial skill in litigating complex legal issues, particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal break claims").  As reflected in the Declarations filed herewith, Class Counsel have considerable experience in prosecuting complex class-wide cases, including, in particular, wage-and-hour actions.  (See Harris Decl. ¶¶ 11-13.) "Overall, the specialized skill of Class Counsel in this area of the law [i]s generally an asset to the Class Members." Franco, 2012 WL 5941801, at *16.  Class Counsel's 33.33% request is therefore reasonable.

### v.   The Reaction of the Class

The class-participation rate and the absence or presence of objections may be

---

[8] See also Castillo v. ADT, LLC, No. CV 2:15-383 WBS DB, 2017 WL 363108, at *7 (E.D. Cal. Jan. 25, 2017) (in awarding one-third of a class settlement to fees, explaining that "[t]he fact that the requested fees in this case are below the lodestar figure further supports granting approval"); Vizcaino, 290 F.3d at 1050 ("[T]he lodestar . . . provides a check on the reasonableness of the percentage award."); Douglas v. Arcadia Health Servs., Inc., No. CV-11-03552 SBA, 2012 WL 12953866, at *3 (N.D. Cal. Apr. 17, 2012) (final approval for 30% of settlement as fees); Silva v. Banco Popular N. Am., No. CV 08-6709 JFW (RZX), 2009 WL 10672397, at *2 (C.D. Cal. June 22, 2009) (awarding fees of 28% of $1,050,000 settlement); Blandino v. MCM Constr., Inc., No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding a fee of 30%); Huber v. Majestic Pictures, Inc., No. CV0802243GAFMANX, 2009 WL 10671416, at *6 (C.D. Cal. Nov. 24, 2009) (approving "an award of thirty percent of the settlement").

factors to weigh in this matter.  <u>See, e.g.</u>, <u>Franco</u>, 2012 WL 5941801, at *14 (explaining that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that [its] terms are favorable'") (quoting <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 529 (C.D. Cal. 2004); <u>Sandoval v. Tharaldson Employee Mgmt., Inc.</u>, 2010 WL 2486346, at *7 (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response).  As Notice was only mailed to Class Members a few weeks ago, Plaintiffs will update the Court after the Notice Period has closed regarding the participation by Class Members and their reaction to the Settlement.

### D.    The Incurred Costs Should Be Reimbursed

The Settlement Agreement permits Class Counsel to recover actual costs and expenses incurred up to the date of filing of this application.  Class Counsel is seeking reimbursement of $11,988, which includes expenses actually incurred in the prosecution of the Settled Cases.  As detailed in the Declaration of Alan Harris filed herewith (<u>see</u> Harris Decl. Ex. 1 at 0059-0061), the costs include transcript costs, filing fees, copy costs, "and electronic research fees [which] fees are routinely reimbursed."  <u>Franco</u>, 2012 WL 5941801, at *22.  <u>See also</u> <u>Odrick v. UnionBanCal Corp.</u>, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (in a common-fund settlement, noting that class counsel were seeking reimbursement of "costs for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs," and concluding that "reimbursement of these costs and expenses in their entirety is justified"); <u>Knight</u>, 2009 WL 248367, at *7 (in a common-fund settlement, stating that class counsel's expenses "relate to online legal research, travel, postage and messenger services, phone and fax charges, court costs, and the costs of travel"; that "[a]ttorneys routinely bill clients for all of these expenses"; and that "it is therefore appropriate for counsel here to recover these costs from the [s]ettlement [f]und").  The request should therefore be approved in full.

1

### E.    The Requested Enhancement Payments Are Reasonable

2    Pursuant to the terms of the Settlement Agreement, Class Counsel have applied

3    for Enhancement Awards to Plaintiffs of $5,000 each for their broad releases and

4    longstanding efforts in bringing and prosecuting this case, including participating in

5    settlement discussions.[9] According to the Ninth Circuit, "[i]ncentive awards are fairly

6    typical in class action cases" and "are intended to compensate class representatives for

7    work done on behalf of [a] class, to make up for financial or reputational risk undertaken

8    in bringing the action, and, sometimes, to recognize their willingness to act as a private

9    attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir.

10   2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).

11   Courts should consider "the risk to the class representative in commencing suit, both

12   financial and otherwise," as well as "the amount of time and effort spent by the class

13   representative" and "the personal benefit (or lack thereof) enjoyed by the class as a result

14   of the litigation." Smith v. CRST Van Expedited, Inc., No. 10-CV-1116-IEG (WMC),

15   2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (quoting Van Vranken v. Atl. Richfield

16   Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)) (internal quotations omitted).

17   Here, all of the factors support approving the awards.  First, as a direct result of

18   this suit, participating Settlement Class Members will receive substantial payments on

19   account of the damages they suffered due to Defendant's alleged labor law violations.

20   Second, Plaintiffs have expended considerable time conferring with Class Counsel and

21   their investigators, providing factual background and support, analyzing data provided

22   by Defendant.  Notably, all Plaintiffs have participated in discussions with Class

23   Counsel and have spoken with other Class Members.  Finally, Plaintiffs "undertook the

24   financial risk that, in the event of a judgment in favor of [Defendants] in this action,

25   [they] could have been personally responsible for any costs awarded in favor of

26

27
28

---

[9] Plaintiffs request enhancement awards of $5,000 each, which consists of a $2,000 payment in exchange for their services as PAGA/Class Representatives as well as a $3,000 payment as consideration for a broad general release of their claims.  Oct. 18, 2021 Harris Decl., Ex. 1 [ECF Doc. 140-1] at pp.19-20, ¶ 18(c).

[Defendants]." <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 491 (E.D. Cal. 2010). Indeed, enhancement awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." <u>Campbell v. First Investors Corp.</u>, No. 11-CV-0548 BEN (WMc), 2012 WL 5373423, at *8 (S.D. Cal. Oct. 29, 2012). Because the requested Enhancement Awards are in line with the current trend for such awards and *below* the range sometimes awarded in similar cases, see <u>Smith</u>, 2013 WL 163293, at *6 (noting that incentive/enhancement awards range to far greater heights than the requested $5,000 awards), they should be approved.

## IV.    CONCLUSION

This was a hard-fought case resulting in a well-deserved victory for the Class. The requested $765,900 fee award is appropriate, as:

a.    The Class Members will enjoy a substantial recovery of lost wages;

b.    The lodestar supports to the requested fee;

c.    Class Counsel prevailed on highly contested motions;

d.    No fee had been paid nor any reimbursement of costs realized for nearly four years.

e.    The case has resulted in changed employment practices and the Settlement provides for injunctive relief.

This Court should approve Class Counsel's reasonable request for $765,900 in attorney's fees and $11,988 in litigation costs, all payable from the $2,300,000 Gross Settlement Value.

DATED: February11, 2022                       HARRIS & RUBLE

*Alan Harris*

Alan Harris/*Attorneys for Plaintiffs*