1  Alan Harris (SBN 146079)
   Priya Mohan (SBN 228984)
2  HARRIS & RUBLE
   655 North Central Ave., 17th Fl.
3  Glendale, California 91203
   Facsimile:  (323) 962-3004
4  aharris@harrisandruble.com
   pmohan@harrisandruble.com
5
   *Attorneys for Plaintiffs*
6

7

8

9                   **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  ISABEL ARTIGA, GABRIEL              Case No. 2:19-cv-06735-GW-RAO
    RODRIGUEZ and JESSICA SHEEHAN,      *Assigned to Hon. George H. Wu*
    individually and on behalf of all others
13  similarly situated,                 (Removed from Los Angeles Superior
                                        Court, Case No. 19STCV1968)
14                 Plaintiffs,
                                        **NOTICE OF MOTION AND**
15        v.                            **MOTION FOR FINAL APPROVAL**
                                        **OF CLASS ACTION**
16  ABM INDUSTRY GROUPS, LLC, a         **SETTLEMENT; MEMORANDUM**
    Delaware Limited Liability Company, and  **OF POINTS AND AUTHORITES IN**
17  DOE ONE through and including DOE   **SUPPORT OF MOTION**
    TEN,
18                                      Date:  April 4, 2022
                   Defendants.          Time: 8:30 a.m.
19                                      Ctrm: 9D
                                              350 West First Street
20  ABM INDUSTRY GROUPS, LLC, a               Los Angeles, CA 90012
    Delaware Limited Liability Company
21
                 Counter-Claimant,      Action Filed: June 4, 2019
22                                      Trial Date:    None Set
          v.
23
    I. ARTIGA, an individual, and ROES 1
24  through t10,

25              Counter-Defendants.

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE** that, on April 4, 2022, at 8:30 a.m., in Courtroom 9D of the above-captioned Court located 350 West 1st Street, Los Angeles, California 90012, or on such other date and time as the Court may designate, the Honorable George H. Wu presiding, Plaintiffs Isabel Artiga, Jessica Sheehan, Gabriel Rodriguez, Mario Ernesto Gil Canas, Jaime Mendoza and Lorenza Torres ("Plaintiffs") will move for an order granting final approval of the class-wide Settlement reached in the above-captioned action, the "Settlement Agreement."[1]

The parties have agreed to payment of settlement awards to participating claimants from a non-reversionary $2,300,000 gross settlement fund.   As a very clear validation of the Settlement, as of the filing of this motion, a significant portion, nineteen percent, of the total class, or 8,220 class members, have elected to participate in the settlement.  As there are still at least two weeks remaining in the claims period, the final participation rate will be well over twenty percent.  .  These class members have been divided into the following subclasses for purposes of allocation of the settlement proceeds:

1) **New Hire Wage Subclass**:  All non-exempt California employees of ABM Industry Groups, LLC and its predecessors ("ABM"), who were hired during the period from October 14, 2015 to the earliest of December 31, 2021, or preliminary approval of the Stipulation of Settlement (the "Term Date").  There are currently over 6,048 New Hire Wage Subclass members who have elected to participate in the settlement.  There are currently, approximately 2,587 subclass members who have also opted into the FLSA collective action.

2) **Wage Statement Settlement Subclass**:  All ABM non-exempt California employees from October 14, 2018 to the Term Date.  There are currently over

---

[1] The Motion is intended to ultimately result in the settlement and dismissal of the PAGA claim pending in the state court action, <u>Mario Ernesto Gil Canas v. ABM Industry Groups, LLC</u>, Los Angeles Superior Court Case No. 20STCV37443 (filed Sept. 30, 2020).  The class definition specifically excludes approximately 100 ABM "Event Tech" employees who are the subject of the <u>Romero-Abrego v. ABM Industries, Inc.</u> litigation pending in the San Mateo Superior Court, Case No. 20-CIV-04089 (filed Sept. 22, 2020).

6,563 Wage Statement Settlement Subclass members who have elected to participate in the settlement.

3) **Former Employee Uniform Deposit Settlement Subclass**:  All ABM California employees, with uniform deposits on file, who separated between June 4, 2015 and May 7, 2021, the date on which ABM terminated its uniform deposit program.  There are currently over 641 Former Employee Uniform Deposit Settlement Subclass members who have elected to participate in the settlement.

4) **Current Employee Uniform Deposit Settlement Subclass**: All ABM California employees, with uniform deposits on file, who were active as of May 7, 2021, the date on which ABM terminated its uniform deposit program. There are currently over 270 Current Employee Uniform Deposit Settlement Subclass members who have elected to participate in the settlement.

5) **Supervisor Meal and Rest Break Settlement Subclass**:  All ABM non-exempt California supervisors and leads, from October 14, 2015 to the Term Date. "Supervisors and Leads" shall be defined as all nonexempt employees with the term "Manager," "Supervisor," "Lead" or "Foreperson" in their job description field according to ABM records.  There are currently over 685 Supervisor Meal and Rest Break Settlement Subclass members who have elected to participate in the settlement.  The number of pay periods for these participating claimants is 34,649, twenty-nine percent of the total pay periods for the Subclass

6) **PAGA Settlement Group**:  All California allegedly aggrieved employees in the Actions from August 28, 2017 to the Term Date. "Allegedly aggrieved employees" is defined as all employees within the scope of the PAGA letters

1    submitted by Plaintiffs.  There are currently over 7,240 PAGA Settlement

2    Group members who have elected to participate in the settlement.

3    Based on some 8,220 claims received through March 3, 2022, the gross recovery for each

4    participating claimant is $279.

5    As of March 3, 2020, the PAGA allocation, to be distributed to the LWDA and to

6    participating PAGA Subclass Members and members of the Current Employee Uniform

7    Subclass, is $181,532.35   Here, the settlement proceeds have been allocated among the

8    various subclasses so that claimants will receive appropriate payments based on the

9    alleged harm they suffered.  For Claimants who fall into more than one subclass, each

10   will receive a payment for each subclass in which they are a member.  The gross recovery

11   will be reduced by amounts awarded in connection with the February 11, 2022, Plaintiffs

12   Motion for Attorney's Fees, Costs and Enhancement Awards [ECF Doc. 158.]  In the

13   Motion, Plaintiffs request payment of fees to counsel in an amount not to exceed

14   $765,900; reimbursement of counsel's costs in the amount of $11,998; payment of

15   enhancement awards to the class representatives in the amount of $5,000 each to Artiga,

16   Sheehan, Rodriguez, Canas, Mendoza and Torres. Settlement administration fees are also

17   estimated to be $103,500.

18        The Motion is based on the grounds that the Settlement is fair, adequate and

19   reasonable given the:

20        (1) relative strengths and weaknesses of the Parties' claims and defenses;

21        (2) risks, expense, complexity and likely duration of the litigation, but for

22        the settlement;

23        (3) amount offered in settlement; and

24        (4) uncertainties of appeal.

25   Since the proposed class meets the requirements of Federal Rule of Civil Procedure 23,

26   the class should be certified for settlement purposes.  As a clear validation of the

27   Settlement, there are no objections and, as of March 5, 2022, the Claims Administrator

28   has reported only six opt-outs from a class of 42,787, an opt-out rate of less than one

tenth of one percent.  As of March 3, 2022, the Claims Administrator had received 8,220 timely claims, approaching a 20% participation rate.  The Claims Administrator is continuing to analyze claims, as outlined in the March 4, 2022 Claims Administrator Declaration of Emilio Cofinco, filed herewith.  The Claims analysis process will be completed by the end of March, shortly after the close of the claims period on March 21, 2022.  The undersigned will file a short supplement to this Motion at that time, providing a complete analysis of the Claims and opt-outs.  As explained in detail in the accompanying memorandum of points and authorities and Declaration of Alan Harris, given the relative strengths and weaknesses of the various claims at issue, the Settlement should be approved.

The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declarations of Alan Harris and Emilio Cofinco of CPT Group, Inc. filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on July 16, 2021 and on subsequent dates thereafter.


Dated:  March 7, 2022                                    HARRIS & RUBLE


                                                        *Alan Harris*
                                                        Alan Harris
                                                        *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT...........2
        A.      Procedural History.................................................................2
        B.      Settlement Terms..................................................................4

III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE........12
        A.      The Strength of Plaintiffs' Case ........................................14
        B.      The Likely Duration Of Further Litigation .......................14
        C.      The Risk Of Maintaining Class-Action Status Through Trial ..........15
        D.      The Settlement Amount Offered ........................................16
        E.      The Extent Of Discovery And Stage Of The Proceedings ...............16
        F.      The Experience And Views Of Counsel ...........................17
        G.      The Reaction Of Settlement Class Members ....................17

IV.     PLAINTIFFS SATISFY THE FLSA AND CLASS
        CERTIFICATION STANDARDS FOR SETTLEMENT PURPOSES ......18

V.      CONCLUSION........................................................................................19

# TABLE OF AUTHORITIES

**Cases**

Bellinghausen v. Tractor Supply Co.,
  306 F.R.D. 245 (N.D. Cal. 2015) .................................................................. 16
Boeing Co. v. Van Germet,
  444 U.S. 472 (1980) ..................................................................................... 10
Brinker Rest. Corp. v. Superior Court,
  53 Cal. 4th 1004 (2012) ............................................................................... 15
Campbell v. First Investors Corp.,
  2012 WL 5373423 (S.D. Cal. filed Oct. 29, 2012) ...................................... 11
Dunk v. Ford Motor Co.,
  48 Cal. App. 4th 1794 (1996) ...................................................................... 17
Dunleavy v. Nadler,
  213 F.3d 454 (9th Cir. 2000) ....................................................................... 16
Hesse v. Sprint Corp.,
  598 F.3d 581 (9th Cir. 2010) ....................................................................... 12
In re Austrian & German Bank Holocaust Litigation,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................... 17
In re Online DVD-Rental Antitrust Litig.,
  779 F.3d 934 (9th Cir. 2015) ....................................................................... 13
Rodriguez v. West Publ'g Corp.
  563 F.3d 948 (9th Cir. 2009) .................................................................... 8, 10
Khanna v. Inter-Con Sec. Sys., Inc.,
  2012 WL 4465558 (E.D. Cal. Sept. 25, 2012) ............................................ 18
Laskey v. Int'l Union,
  638 F.2d 954 (6th Cir. 1981) ....................................................................... 17
Mitchell v. Acosta Sales, LLC,
  841 F. Supp. 2d 1105 (C.D. Cal. 2011) ....................................................... 18
Monterrubio v. Best Buy Stores, L.P.,
  291 F.R.D. 443 (E.D. Cal. 2013) ................................................................... 9
Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 14, 17
Ordonez v. Radio Shack, Inc.,
  2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013) ............................... 15
Plaintiffs v. City of Seattle,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................... 12
Rodriguez v. West Publ'g Corp.,
  2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007) .............................. 15, 17
Smith v. CRST Van Expedited, Inc.,
  2013 WL 163293 at *6 (S.D. Cal. filed Jan. 14, 2013) .......................... 10, 11

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2003) ........................................................... 10

Stoetzner v. U.S. Steel Corp.,
    897 F.2d 115 (3d. Cir. 1990) ........................................................... 17

Thompson v. Costco Wholesale Corp.,
    2017 WL 697895 (S.D. Cal. 2017) ................................................. 18

Vasquez v. Coast Valley Roofing, Inc.,
    266 F.R.D. 482 (E.D. Cal. 2010) ................................................... 11

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338, 344 (2011) ............................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................... 3

Cal. Lab. Code § 201.3 ...................................................................... 14

Cal. Lab. Code § 203 ............................................................................ 8

Cal. Lab. Code § 226 ............................................................................ 3

Cal. Lab. Code § 512 .......................................................................... 15

Cal. Lab. Code § 1194 .......................................................................... 3

**Other**

Federal Rule of Civil Procedure 23 ....................................... 9, 12, 13, 18, 19

PLS.' NOT. OF MOT. AND MOT. FOR FINAL APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Artiga, Rodriguez, Sheehan, Canas, Mendoza and Torres (collectively "Plaintiffs") respectfully request that the Court grant final approval of the proposed Class Action Settlement Agreement (the "Settlement") reached with Defendant ABM Industry Groups, LLC ("ABM").   The proposed Settlement will resolve the collective action, class-wide and representative claims alleged in this case and the related state court PAGA action, <u>Canas v. ABM Industry Groups, LLC</u>, Los Angeles Superior Court Case No. 20STCV37443.[2] The gross settlement value of the compromise is $2,300,000. ABM will also make an additional payment, outside of and in addition to the gross settlement fund, for payroll taxes. The approximate gross recovery for each of the class members, based on the current participation rate as of the filing of this Motion, almost twenty percent, is $279 ($2,300,000 [settlement value]/8,220 [number of participating claimants]). The Settlement also provides that no less than ten percent of the Net Settlement Amount shall be allocated for payment of PAGA penalties.  Assuming all requested payments are approved by the Court, the estimated Net Settlement Amount, including the amount allocated to PAGA, is $1,388,602.[3]

The Settlement was only achieved after Plaintiffs' undertaking of a robust factual and legal investigation into Defendant's wage and hour policies, significant motion practice, mediation with respected Ninth Circuit mediator Roxanne Ashe and extensive, direct settlement negotiations presided over by Ms. Ashe.

A diligent effort has been made to provide notice to Class Members of the Settlement and provide an opportunity for them to make a claim.  Pursuant to the Court's

---

[2] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Joint Stipulation of Class Action Settlement Agreement and Release (the "Settlement").  The Settlement is Exhibit 1 to the Harris Decl. filed herewith.
[3] On February 11, 2022, Plaintiffs filed their Motion for Attorney's Fees, Costs and Enhancement Awards [ECF Doc. 158.]  In the Motion, Plaintiffs request payment of fees to counsel in an amount not to exceed $765,900; reimbursement of counsel's costs in the amount of $11,998; payment of enhancement awards to the class representatives in the amount of $5,000 each to Artiga, Sheehan, Rodriguez, Canas, Mendoza and Torres).  Settlement administration fees are also estimated to be $103,500.

1   December 14, 2021 Order Granting Preliminary Approval [ECF Doc. 154], the Court-

2   approved Notice has been sent to the conditionally certified class (42,787 individuals)

3   and a website was established, which included a summary of the Settlement, the options

4   for Class Members and the deadlines to exercise them, relevant court documents, a

5   downloadable version of the Notice packet, and contact information for the Settlement

6   Administrator and Class Counsel.  (Declaration of Emilio Cofico for CPT Group, Inc.

7   ("CPT Decl.") at ¶ 4, Ex. A.

8          For the reasons detailed below, the Settlement is fair, reasonable and adequate.  The

9   Settlement satisfies all applicable requirements for final approval.  It appears that, subject

10  to final review, the claims process has resulted in over 8,220 valid and timely claims, an

11  extraordinary result.  Only some six Class Members, less than one tenth of one percent of

12  the Class, have opted-out of the Settlement, and there are no objections to the Settlement,

13  at all.  Although the Parties cannot yet report the precise number of valid Claims and opt-

14  outs, the Settlement Agreement has the typical process in place for analysis and

15  validation of Claims and opt-outs, with the experienced Settlement Administrator having

16  ultimate authority to resolve any disputes.  Declaration of Alan Harris ("Harris Decl."),

17  Ex. 1 at ¶ 27.  For these reasons, the Settlement should be granted final approval.

18  **II.   PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT**

19         **A.   Procedural History**

20         This is a PAGA law enforcement action, class action and Fair Labor Standards Act

21  collective action, seeking unpaid wages, damages, penalties and attorneys' fees and costs,

22  against ABM.[4]  Plaintiffs' July 7, 2020 Second Amended Complaint ("SAC") [ECF Doc.

23  96] was filed after the Court's ruling on Defendant's Rule 12(b)(6) Motion to Dismiss the

24  First Amended Complaint.  The Settlement contemplated the filing of a Third Amended

25

26  ─────────────────────
    [4] On August 28, 2018, Plaintiff Artiga provided statutory notice to the LWDA and to
27  Defendant of the claims set forth in this complaint.  On October 11, 2019, Plaintiffs
    Rodriguez and Sheehan provided statutory notice to the LWDA and to Defendant of the
28  claims set forth in this complaint. In Canas, notice was provided to the LWDA and to
    Defendant on May 13, 2020.  Harris Decl., ¶¶ 3 and 5.

Complaint (the "TAC") and the operative TAC was filed pursuant to the stipulation of the parties submitted concurrently with the Motion for Preliminary Approval.  The TAC added Plaintiffs Canas, Mendoza and Torres as Plaintiffs and alleges the following claims against Defendant ABM:  (1) failure to provide wage statements that supplied all of the information required by Code § 226(a); (2) failure to pay minimum wages in violation of Code § 1194 and the IWC Wage Order; (3) failure to pay minimum wages under the Fair Labor Standards Act; (4) failure to timely pay all wages due at the time of termination of employment; (5) failure to provide proper meal breaks to Plaintiffs Rodriguez and Sheehan and other Aggrieved Employees; (6) failure to provide proper rest breaks to Plaintiffs Rodriguez and Sheehan and other Aggrieved Employees; (7) violation of Cal. Bus. & Prof. Code § 17200; and 8) claim for PAGA penalties.  TAC [ECF Doc. 157] at ECF pp. 1-2.

On March 18, 2021 the parties attended a private mediation with Ninth Circuit Mediator Roxanne Ashe. After mediation, the parties continued to negotiate, including several further settlement discussions with Mediator Ashe.  In July, 2021, the parties reached a preliminary agreement to settle this case, which was documented in the July 16, 2021 Memorandum of Agreement.  The parties subsequently negotiated a long form settlement agreement and that settlement is now before the Court for final approval. (Harris Decl., Ex. 1.)

The parties have engaged in significant briefing in this case and investigation of the facts at issue, and have exchanged extensive documents and data, all of which allowed the Parties to fully assess the value of the claims involved.  This Agreement comes after more than two years of litigation, substantial motion practice and intense settlement negotiations, including a full day of mediation and many subsequent conference calls and follow up conferences with Ninth Circuit Mediator, Roxanne Ashe.

This settlement will also operate to resolve the PAGA claim asserted in Canas v. ABM Industries, LLC, Case No. 20STCV (filed September 30, 2020), currently pending in Los Angeles Superior Court.  Plaintiffs and their counsel have concluded that the

Settlement reflected herein is fair, reasonable, and in the best interests of the Settlement Class and respectfully request that the Settlement be granted final approval.

**B.   Settlement Terms**

**1.  The Gross Settlement Amount and Net Settlement Amount**

Again, the gross settlement value of the Settlement Agreement is $2,300,000. The settlement amount is non-reversionary.  Subject to this Court's approval, the Gross Settlement Amount will be used to pay the costs of delivering the Class Notice and the Claim Form to the Settlement Class, as well as to pay attorney's fees and costs to Class Counsel, and Enhancement Awards to Plaintiffs and the Proposed Plaintiffs.[5] The remainder of funds after accounting for the above payments will constitute the "Net Settlement Amount" ("NSA").

The NSA will be distributed to the LWDA and Settlement Class members who do not "opt out" of the settlement and who submit valid and timely Claim Forms. (Harris Decl., Ex. 1 at p. 7, ¶ m.)  The parties have agreed to allocate no less than ten percent of the Net Settlement Amount to resolve all claims in the action under PAGA.  Pursuant to PAGA, 75% of the PAGA allocation shall be paid to the LWDA, with the remaining 25% to be distributed to PAGA Settlement Group members.  Taking into account the requested enhancement awards to Plaintiffs and potential Plaintiffs (a total of $30,000), requested attorney's fees and costs ($765,000 and $11,998), and the estimated costs of claims administration ($103,500), **the NSA is estimated to be, at minimum, $1,388,602** ($2,300,000 Gross Settlement Value - $30,000 enhancement awards - $765,900 attorney's fees - $11,998 attorney's costs – $103,500 claims administration costs).  Based on the estimated NSA, the minimum PAGA allocation is $138,8,60, or 10% of the NSA. Based on the claims rate as of March 3, 2022, the PAGA allocation exceeds the minimum allocation.

---

[5] As part of the Settlement, the parties have agreed to the filing of a Third Amended Complaint which includes the claims of additional Plaintiffs and Class Representatives, Canas, Torres and Mendoza.  (Harris Decl., Ex. 1 at p.3: 12-26.)

## 2. The Proposed Subclasses and Allocation of Funds

The Net Settlement Amount is allocated among the various subclasses so that participating claimants will receive payments related to the alleged harm they suffered.  If a claimant falls into more than one subclass, they will be entitled to receive a payment for each subclass in which they are a member.  The chart below sets forth subclass definitions, and the proposed allocation of funds among the groups and the estimated payouts to each subclass based on the current claims administration rate.

| Subclass Definition and Estimated Size | Fund Allocation Formula | Estimated Payout based on the current claims participation rate |
|---|---|---|
| **New Hire Wage Subclass**:<br><br>All non-exempt California employees of ABM and its predecessors, who were hired during the period from October 14, 2015 to the earliest of December 31, 2021, or preliminary approval of the Stipulation of Settlement (the "Term Date").  As of March 3, 2022, there are 6,048 New Hire Wage Subclass members who have submitted claims.  Of these Subclass members, 2,587 have also opted into the FLSA collective action. | Each claimant will receive $21, with each eligible employee who opts into the FLSA collective action, an additional $10, each. | Based on the current participation, the total claimed would be $152,878 (=($21*6,048) + ($10*2,587)) |
| **Wage Statement Settlement Subclass**:<br><br>All non-exempt California employees of ABM from October 14, 2015 to the Term Date.  As of March 3, 2022, there are 6,563 Wage Statement Settlement Subclass members who have submitted claims. | Each claimant will receive $50. | Assuming 6,563 participating claimants, the total claimed would be $328,150 (=$50* 6,563 participating claimants) |

| | | |
|---|---|---|
| **Former Employee Uniform Deposit Settlement Subclass**:<br><br>All California employees of ABM and its predecessors, with uniform deposits on file, who separated between June 4, 2015 and May 7, 2021, the date ABM terminated its uniform deposit program. As of March 3, 2022, there are 641Former Employee Uniform Deposit Settlement Subclass members who have submitted claims. | Each claimant will receive $50. | Assuming 641 participating claimants, the total claimed would be  $32,050 (=$50 * 641 participating claimants) |
| **Current Employee Uniform Deposit Settlement Subclass**:<br><br>All California employees of ABM, with uniform deposits on file, who were active as of May 7, 2021, the date ABM terminated its uniform deposit program. As of March 3, 2022, there are 270 Current Employee Uniform Deposit Settlement Subclass members who have submitted claims. | Upon termination of its uniform deposit program, ABM returned over $80,000 in uniform deposits, with interest, to this settlement subclass via payroll. Settlement subclass will automatically participate in the PAGA payment without need for making a claim. | See PAGA allocation below |
| **Supervisor Meal and Rest Break Settlement Subclass**:<br><br>All non-exempt California supervisors and leads of ABM and its predecessors, from October 14, 2015 to the Term Date. "Supervisors and Leads" shall be defined as all non-exempt employees with the term "Manager," "Supervisor," "Lead" or "Foreperson" in their job description field according to ABM records. As of March 3, 2022, there are 685 Supervisor Meal and Rest Break Settlement Subclass members who have submitted claims. The number of pay periods for these claimants is 34,649. | Each claimant will receive $20 per pay period worked. | Assuming 685 Supervisors with 34,649 pay periods participate, the total would be $692,980 (=$20 * 34,649). |

PLS.' NOT. OF MOT. AND MOT. FOR FINAL APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

| **PAGA Settlement Group**: All California allegedly aggrieved employees in the Actions from August 28, 2017 to the Term Date. "Allegedly aggrieved employees" shall be defined as all employees within the scope of the PAGA letters submitted by Plaintiffs. As of March 3, 2022, there are 7,240 PAGA Settlement Group members who have submitted claims. | No less than 10% of the Net Settlement Amount, distributed 75% to the LWDA and 25% equally distributed to claimants who are in the PAGA Settlement Group. | Based on the current participation rate, from the estimated net settlement amount of $1,388,602, the total PAGA allocation is $181,532.35 |
|---|---|---|

As described above, based on the current claims rate, the total claims equal $1,207,069 (=$152,878+$328,150+$32,050+$692,980), resulting in no pro rata reductions to subclass members and an increase in the PAGA recovery to a total of $181,532, which is $42,672.35 more than the minimum PAGA allocation.[6] Based on Class Counsel's analysis of the unpaid wages, damages, penalties and civil penalties at issue in this case, counsel has concluded that the settlement is fair to the Class. (Harris Decl., ¶¶ 7-10.)

The Settlement is sufficient to provide Plaintiffs and qualified claimants substantial recovery for their claims. The settlement has been structured to allocate appropriate relief to the qualified claimants based on the nature of their claims: members of the New Hire Wage Subclass who submit claims will be compensated for 100% of their alleged lost wages due to the Defendant's alleged failure to compensate them for time spent during required new hire orientations; claimants in the Wage Statement Subclass will receive a reasonable recovery of penalties due to Defendant's alleged failure to provide adequate wage statements; claimants in the Former Employee Uniform Deposit Subclass will receive substantially 100% of the interest they are entitled to receive for this claim; claimants in the Current Employee Uniform Deposit Subclass have already benefited

---

[6] If the claims made by Qualified Claimants do not exhaust the Net Settlement Amount, the differential will be added to the PAGA allocation. If the claims made by qualified claimants exceed the Net Settlement Amount, the payments to qualified claimants shall be reduced on a pro-rata basis. (Harris Decl., Ex. 1 at p. 22, ¶ 19.)

from this lawsuit as ABM ceased its uniform deposit program and returned uniform deposits to these workers, as well as the interest that had accrued.  Therefore members of this group will share in the PAGA payment allocation; claimants in the Supervisor Meal and Rest Break Subclass will receive payments based on the pay periods they worked so that claimants who suffered more alleged violations will receive a greater payout.  The payment of $20 per claimant per pay period worked is a substantial amount in recognition of Defendant's alleged failure to pay premium wages to these subclass members on account of the failure to properly provide all rest periods and meal breaks.  In a case seeking recovery of unpaid wages, it is appropriate to substantially discount penalties and civil penalties, or to entirely exclude them from the analysis, as in <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 964 (9th Cir. 2009). Here, no Code §203 penalties are being made as additional payments to former employees, and PAGA civil penalties are substantially reduced to $10,000.

The Settlement will provide participating Class Members with a substantial recovery, as will be detailed in the supplement to this Memorandum, to be filed in the end of March, 2022.  Based on the data the parties have received thus far, on average, the 8,220 claiming Settlement Class Members will recover approximately $146 each, not taking into consideration the PAGA allocation.

### 3.  Notice and Administration of the Settlement

The deadline for claims, objections, and opt-outs will be sixty (60) days after class notice is sent, a notice designed to provide the best notice practicable.  (Harris Decl., Ex. 1, p. 6, ¶1(h).)  If more than five percent of the Settlement Class Members opt-out, Defendant, in its sole election, has the right to void this agreement and all rights and obligations contained therein. In such case the Parties shall return to their respective previous positions prior to entry of this Agreement and Defendant agrees to bear all settlement administration costs incurred up to the date of nullification. (Harris Decl., Ex. 1, p. 15, ¶ 12.)

CPT Group, Inc. was appointed as the third-party settlement administrator.   Its duties include: a) printing and mailing class notices; b) collecting and processing Claim Forms; c) handling inquiries from and correspondence with Class Members; d) re-mailing Notices; e) skip-tracing; f) resolving disputed claims; and g) calculating and issuing Settlement payments. CPT provided notice and is in the process of analyzing the Claims.

Pursuant to the Preliminary Approval Order, the Settlement Administrator sent Class Notice to the 42,787 Class Members on January 18, 2022.  (CPT Decl., ¶ 7.)  The Class Notice includes all of the information required by Federal Rule of Civil Procedure 23. Compare CPT Decl. Ex. A with Fed. R. Civ. Proc. 23(c)(2)(B) (specifying the elements of class notice.)  CPT also established and is maintaining a website dedicated to this project to provide additional information to Class Members.  The Class Notice Packet (Ex. A] to the CPT Decl.) and relevant court filings are available for download from the website.  The website is accessible to Class Members 24 hours a day, 7 days a week.  After the initial mailing, 2,886 Notices were returned as undeliverable by the post office and new notices were resent to 2,521 Class Members for whom forwarding addresses were provided by the post office or updated addresses were located through skip-tracing procedures.

The March 21, 2022 claims deadline provided sixty days from the date of mailing to submit completed Claim Forms or exclusion requests to the Claims Administrator. Under the circumstances, the notice procedures constituted the best notice practicable. Fed. R. Civ. Proc. 23(c)(2)(B).  See e.g. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 452 (E.D. Cal. 2013).

The Settlement provides that the Administration Costs associated with this process will be deducted from the Gross Settlement Amount. The costs associated with the administration of this matter are $103,500. This includes all costs incurred to date, as well as the estimated costs involved in completing the settlement distribution. (CPT Decl. ¶ 15.) In negotiating the Settlement, Class Counsel insisted on a bidding process in order

to secure the most economical alternative in selecting a Claims Administrator. As noted above, the expenses associated with claims administration will come from the Common Fund. This is appropriate. Principles of equity permit fees and costs associated with a common-fund settlement to come from the fund itself. See e.g., Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) (explaining that the common-fund doctrine ―allows a court to assess attorney's fees against the entire fund, thus spreading fees proportionately among those benefited‖). This principle extends to the fees and costs of claims administration. See Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that, "[t]he postsettlement cost of providing notice to the class can reasonably be considered a benefit to the class").

### 4.  Enhancement Awards and Reimbursement Fees and Costs

In accordance with the Settlement Agreement, Plaintiffs' Counsel filed their petition for attorneys' fees and costs and incentive awards on February 11, 2022 [ECF Doc. 158].

Plaintiffs have petitioned the Court for class representative service awards of $5,000 to each of the Class Representatives: Artiga, Rodriguez, Sheehan, Canas, Torres and Mendoza.

According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59. Courts should consider "the risk to the class representative in commencing suit, both financial and otherwise," as well as "the amount of time and effort spent by the class representative" and "the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation." Smith v. CRST Van Expedited, Inc., 2013 WL 163293 at *6 (S.D. Cal. filed Jan. 14, 2013) (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors weigh in favor of approving the awards. First, as a direct result of Plaintiffs having brought this suit, participating Settlement Class Members will receive a cash benefit in recognition of the claims alleged in this case, most of which are penalties. Second, Plaintiffs have expended considerable time conferring with Class Counsel and their investigators, providing factual background and support, analyzing Defendant's provided data, and participating in the mediation process and subsequent settlement discussions. Finally, Plaintiffs "undertook the financial risk that, in the event of a judgment in favor of [Defendant] in this action, [they] could have been personally responsible for any costs awarded in favor of [Defendant]." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010). Indeed, enhancement awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." Campbell v. First Investors Corp., 2012 WL 5373423, at *8 (S.D. Cal. filed Oct. 29, 2012).

The enhancement payments contemplated in the Settlement are well *below* the range awarded in similar cases, see Smith, 2013 WL 163293 at *6.  Plaintiffs' Motion for Attorney's Fees, Enhancement Awards, and Reimbursement of Costs is scheduled to be heard concurrently with this Motion on April 4, 2022, and Plaintiffs respectfully request that the enhancement awards be approved.

Considering the inherent delay and risks involved in a case of this nature, logic demands that Plaintiffs' counsel be provided a reasonable fee. In uncertain cases of this nature, in the absence of reasonable fees, competent counsel will not be available to represent the workers. This was a hard fought case resulting in a well-deserved settlement for the Class.  For the reasons set forth in Plaintiffs' Motion for Award of Attorney's Fees, Enhancement Awards and Reimbursement of Costs [ECF Doc. 158], the Court should approve Class Counsel's reasonable request for $765,900 in attorney's fees and $11,998 in incurred litigation costs.

**5.    Release Provision and Opting Out**

If the Court grants final approval of the Settlement, then, in exchange for the consideration described above, Settlement Class Members will be deemed to have released Defendant from those claims that were or could have been asserted in this action stemming from the facts alleged therein.  The Supervisor Meal and Rest Break Subclass are subject to broader releases, as they are releasing claims for missed meal rest breaks. The scope of the release provision is proper. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010). Of course, Class Members who chose to opt out from the Settlement, pursuant to the procedures outlined in the Class Notice, would not release any claims that he or she may have against Defendant. The Claims Administrator has received only six opt outs as of March 3, 2022.  (CPT Decl., ¶ 11.)

## III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

There is a "strong judicial policy" favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).    The valuation of the claims was presented to the Court at Preliminary Approval, and the Court made a preliminary finding that the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.  Dec. 14, 2021 Preliminary Approval Order [ECF Doc. 154.]  Not a single objection has been made to the Settlement.  Nonetheless, to protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits the claims of a certified class to be "settled . . . only with the court's approval" and "only after a hearing and only on a finding [that the agreement is] fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  To determine whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including:  (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

members of the proposed settlement.  <u>In re Online DVD-Rental Antitrust Litig.</u>, 779 F.3d 934, 944 (9th Cir. 2015).

These factors substantively track those provided in the 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)−(D).  The Rule 23(e)(2) factors took effect on December 1, 2018 and, as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own vocabulary for expressing [ ] concerns" regarding whether a proposed settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Accordingly, these codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  <u>Id.</u>; <u>see also</u> 4 Newberg on Class Actions § 13:14 (5th ed.) (noting Rule 23(e) "essentially codified [federal courts'] prior practice").   Plaintiffs' counsel have carefully considered each factor and believe the proposed Settlement Agreement conforms with each requirements.

### A.    The Strength of Plaintiffs' Case

Defendant has disputed every aspect of Plaintiffs' case.  Prior to this case being filed, Defendant rolled out a company-wide arbitration agreement that employees were required to sign as part of Defendant's onboarding process. Although Defendant's Motion to Compel Arbitration was denied, this decision is currently on appeal.  If Defendant prevails on appeal, the bulk of Plaintiffs' claims would be subject to arbitration and could not proceed on a class-wide basis at all. Further, defendant has disputed that meal and rest breaks were not properly provided on a timely basis to Supervisors and Leads.  Defendant has also argued that it is not a temporary services employer under Cal. Lab. Code § 201.3(a)(1) and is therefore not required to report on its wage statements the temporary services assignments employees worked.  Finally, Defendant has argued that its new hire orientation process is not compensable time as it is took place pre-employment.  If Defendant's arguments prevailed, *none* of the Settlement Class might be entitled to *any* damages or penalties.  The Settlement will provide participating Settlement Class Members with substantial payments of penalties and wages commensurate with the strength of their claims. It is therefore more than reasonable. This factor thus weighs in favor of approving the Settlement.  While Plaintiffs believe their cases are factually and legally supported, the projected individual recoveries are substantial vis a vis the amounts which might be recovered after years of additional litigation.

### B.    The Likely Duration Of Further Litigation

In most cases, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002)).  Here, the case has been delayed due to Defendant's appeal of the Court's denial of its motion to compel arbitration.  Certification issues remain undecided and will not be addressed until after the appeal is determined.  Therefore, the likely duration of further

1   litigation might well be several years.  Accordingly, this factor also weighs in favor of

2   approving the settlement.

3           **C.    The Risk Of Maintaining Class-Action Status Through Trial**

4           Here, no class has been certified and ever after certification might be achieved

5   "there is no guarantee that [a d]efendant w[ill] not move for and obtain decertification of

6   [a c]lass before or during trial." Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at

7   *8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust

8   Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th

9   Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that, "if

10  'insurmountable management problems were to develop at any point, class certification

11  can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ

12  Market-Makers Antitrust Litig., 187 F.R.D. at 476).  With respect to meal-break claims in

13  particular, the California Supreme Court has held that "[a]n employer's duty . . .

14  under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if

15  the employer "relieves its employees of all duty, relinquishes control over their activities

16  and permits them a reasonable opportunity to take an uninterrupted 30-minute break."

17  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  This means that an

18  employer is not liable for meal-break violations if the employee voluntarily defers or

19  foregoes a break.  As explained by the Central District of California, there is often "no

20  way of determining on a classwide basis whether [missed breaks] were violations . . . or

21  whether individual class members voluntarily opted to start their meal break late, cut it

22  short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7

23  (C.D. Cal. filed Jan. 17, 2013).  Accordingly, there is a risk that fewer than all of

24  Plaintiffs' class claims will be sustained.  This factor weighs in favor of approval,

25  particularly in light of the defense argument that a person-by-person determination of the

26  application of their policies requires hundreds of mini-trials.  See Wal-Mart Stores, Inc.

27  v. Dukes, 564 U.S. 338, 344 (2011).

28

### D.    The Settlement Amount Offered

The gross settlement amount is $2,300,000.  The settlement is non-reversionary and Defendant will pay an additional amount to fund payroll taxes.  Participating Settlement Class Members can expect to receive substantial payments commensurate with the value of their claims. (Harris Decl., ¶¶ 11-13.)  Settlements awarding just over 10% of damages are often approved.

> When considering the fairness and adequacy of the amount offered in
> settlement, "it is the complete package taken as a whole, rather than the
> individual component parts, that must be examined for overall fairness."
> DIRECTV, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that
> a proposed settlement may be acceptable even though it amounts to only a
> fraction of the potential recovery that might be available to the class
> members at trial." *Id.* (collecting cases).

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement estimated to be as low as 9% of the potential liability). This factor weighs in favor of approving the settlement

### E.    The Extent Of Discovery And Stage Of The Proceedings

Although the parties have not engaged in formal discovery, Plaintiffs have engaged in significant investigation into the claims in this case, including dozens of witness interviews and review of substantial documents and class data provided by the Defendant before and during the settlement negotiation.  (Harris Decl., ¶ 21). The Ninth Circuit has found that, "'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'"  Dunleavy v. Nadler, 213 F.3d 454, 459 (9th Cir. 2000).  In negotiating the Settlement Agreement, Class Counsel were provided significant informal discovery sufficient to evaluate the claims.  In addition, Class Counsel undertook their own independent investigation to inform their negotiating position, including risk re-evaluation in light of the potentially dispositive defenses noted

1  above.  All told, they had sufficient information to make an informed decision about

2  settlement.  This factor thus weighs in favor of approval.

3  **F.    The Experience And Views Of Counsel**

4       As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have

5  substantial experience in prosecuting class actions, including wage-and-hour actions.

6  (Harris Decl. ¶¶ 26-28.)  Counsel are of the opinion that the Settlement Agreement

7  represents an excellent bargain for the Settlement Class, given the inherent risks, hazards,

8  and expenses of carrying the case through trial. (Harris Decl. ¶¶ 10, 16, 21.)  As the

9  Central District has explained, this weighs strongly in favor of approving the settlement.

10  See Rodriguez, 2007 WL 2827379 at *9 (explaining that "the trial court is entitled to, and

11  should, rely upon the judgment of experienced counsel for the parties").

12  **G.    The Reaction Of Settlement Class Members**

13       The reaction of the Settlement Class strongly supports approval of the Settlement:

14  there are no objectors, at all, and as of March 3, 2022, only six members have requested

15  exclusion from the Settlement, less than one-tenth of one percent of the Class.  (CPT

16  Decl., ¶.)  See In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164,

17  175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be

18  viewed as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp.,

19  897 F.2d 115, 118-19 (3d. Cir. 1990) (29 objections out of 281 member class "strongly

20  favors settlement"); Laskey v. Int'l Union, 638 F.2d 954 (6th Cir. 1981) (That only 7 out

21  of 109 class members objected to the proposed settlement should be considered when

22  determining fairness of settlement.)  The response favors final approval.  Nat'l Rural

23  Telcomms. Coop., 221 F.R.D. at 529 ("It is established that the absence of a large

24  number of objections to a proposed class action settlement raises a strong presumption

25  that the terms of the proposed settlement are favorable to the class members"); Dunk v.

26  Ford Motor Co., 48 Cal. App. 4th 1794, 1802 (1996) ("[A] presumption of fairness exists

27  where . . . the percentage of objectors is small.")  Prior to the hearing on the Motion for

28

1   Final Approval, Plaintiffs will file a Supplement, updating the Court regarding the claims
2   filing rates for the Class and each Subclass.

3   Based on the current report from the Settlement Administrator, the overall claims
4   rate is significant, and will exceed twenty percent.  Further, among the Class Members
5   who did respond to the Notice, the result was extremely favorable.  Only six Class
6   Members have opted out of the Settlement, less than one tenth of one percent of the total
7   class. This small percentage of Class Members opting out gives rise to a strong
8   presumption of the Settlement's fairness, particularly where there is not a single
9   objection.

10   **IV.   PLAINTIFFS SATISFY THE FLSA AND CLASS CERTIFICATION**
11   **STANDARDS FOR SETTLEMENT PURPOSES**

12   The factual showing for conditional certification of a FLSA collective action is
13   "modest."  Mitchell v. Acosta Sales, LLC, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011).
14   Courts will approve settlements of both FLSA and Rule 23 claims when the parties
15   expressly allocate settlement payments to the FLSA claims.  Thompson v. Costco
16   Wholesale Corp., 2017 WL 697895 (S.D. Cal. 2017).  Here, the settlement allocates a
17   separate payment to those who opt-into the collective action.  Significantly, "[b]ecause
18   the standards for certifying an FLSA class and evaluating the fairness of an FLSA
19   settlement are less stringent than those imposed by Rule 23," courts have found "the
20   FLSA requisites satisfied by a showing that Rule 23 requirements have been met."
21   Khanna v. Inter-Con Sec. Sys., Inc., 2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012).

22   The Preliminary Approval Order conditionally certified the Class for settlement
23   purposes.  No Class Member has objected to class certification.  Therefore, Plaintiffs
24   submit that the Court should now grant final certification.  Under Rule 23(a), a class may
25   be certified if: 1) numerosity exists; 2) common questions of law and fact are present; 3)
26   the class members' claims are typical of those of the class; and 4) there is an adequate
27   class representative.  See Fed. R. Civ. P. 23(a).  Even if a class action satisfies the Rule
28   23(a) requirements, it must also fulfill one of the requirements set forth under Rule 23(b),

subdivisions 1-3.  Under Rule 23(b)(3), a class action may be maintained if there is a predominance of common questions of law and fact and a class action is superior to other methods of adjudication.  Plaintiffs' briefing in support of preliminary approval of the Settlement describe in detail how the Settlement Class satisfies each of the requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3).  See Motion for Preliminary Approval [ECF Doc. 139] at ECF pp. 20-30.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court issue an Order granting final approval of the Settlement in its entirety and adopt the concurrently lodged Proposed Order Granting Final Approval of Class Action Settlement.

DATED:  March 7, 2022                    HARRIS & RUBLE

*Alan Harris*

*Attorneys for Plaintiffs*